## GOODRICH v. FIRST NAT. BANK IN HEMPHILL.

### No. 2543.

Court of Civil Appeals of Texas. Beaumont. April 3, 1934.

Rehearing Denied April 18, 1934.

B. A. Hamilton, of Jasper, and W. R. Cousins and Bell & McDougald, all of Beaumont, for appellant.

W. I. Davis, of Center, and Minton & Minton, of Hemphill, for appellee.

WALKER, Chief Justice.

On the trial of this case in district court, Sabine county, on November 14, 1932, judgment was entered in favor of First National Bank in Hemphill against appellant, W. F. Goodrich, for the sum of $5,231.83, balance due upon a promissory note dated the 19th day of February, 1926, for the sum of $5,000, due August 19, 1926, with interest at 10 per cent. per annum from date and the usual 10 per cent. attorney's fees, upon which the following payments were conceded by appellee's petition: 1/16/29 $60.82; 1/17/29 $2,303.05; 5/16/29 $256; 10/17/29 $500. Appellee's original petition was filed on the 6th of April, 1931, naming as defendants, Mrs. Cynthia Toole, formerly Mrs. Cynthia Lewis, and her husband, C. P. Toole, joined pro forma, and appellant, W. F. Goodrich. All defendants filed exceptions against appellee's petition, presenting the issue of limitation, which was sustained. On this exception, Mr. and Mrs. Toole pass out of the case and there is no complaint here of the judgment of the lower court in their favor. In answer to appellant's, Goodrich's, exception of limitation, appellee pleaded the following facts as constituting estoppel against appellant and as tolling the statute: The note sued upon was executed to the First National Bank of Hemphill by Judge J. B. Lewis, as principal, and appellant, Goodrich, as surety, on the 30th day of April, 1923; Judge Lewis died the 25th day of January, 1925; on the 19th of February, 1926, his widow, Mrs. Cynthia Lewis, now Mrs. Toole, and appellant executed the note herein sued on, with her as principal and appellant as

surety, in renewal and extension of the Judge Lewis note; the note was not paid, and the bank and the bank examiner were demanding payment; at that time appellant was the attorney for and a director and president of the First National Bank of Hemphill; at appellant's request, in order to save him part of the attorney's fees stipulated for in the note, it was delivered to him by the bank for collection, on his representation that he would secure an attorney to perform this duty; appellant took from the bank the old Judge Lewis note and the note herein sued upon, and delivered them for suit to a firm of attorneys selected by him; at his direction, suit was filed on the Judge Lewis note, and not on the note herein sued upon, though the bank thought that suit was filed on the note now in controversy; the suit thus filed remained on the docket for some time, and until after the payments referred to above had been made; the bank had confidence in appellant and believed that the suit was being properly prosecuted to judgment; without the knowledge or consent of the bank the suit was dismissed, which fact the bank did not learn until after both notes had become barred by limitation, whereupon appellant refused to pay the balance due. Appellee also pleaded a cause of action for damages in the event its cause of action upon the note was barred by limitation.

■ Some confusion exists as to the nature and character of appellee's pleading above summarized, growing out of its designation by appellee as "Plaintiff's Amended Reply to Defendant's First Amended Original Answer," and the circumstances under which it was filed. After the trial court had sustained the exception of limitation to the original petition and entered judgment thereon in favor of the defendants named therein, appellee secured an order from the court giving it permission to replead, which it did, by filing the pleading referred to. It is the contention of appellant that this pleading was in fact an amended original petition, taking the place of the original petition and, as appellee did not replead its cause of action upon the note, the introduction of the note in evidence and the judgment of the court thereon constituted fundamental error. This contention is without merit. In substance, appellee's amended pleading was merely a first amended first supplemental petition and should have been so designated; but no exception was reserved against the name given by appellee to this pleading, hence the name indorsed thereon was immaterial error. In Chicago, R. I. & T.

Railway Co. v. Halsell, 98 Tex. 244, 83 S. W. 15, our Supreme Court said:

"In determining what pleadings are thus superseded by amendment we must look to their contents—to what they are—and not merely to what they are called."

See, also, Glenn v. Dallas County Bois D'Arc Island Levee District, 114 Tex. 325, 268 S. W. 452.

■ After the court had sustained the exception to appellee's petition, the proper pleading for it to file was a supplemental petition, wherein it had the right to plead facts which, if true, would toll the statute of limitation. This it did by this particular pleading. As supporting this proposition, we quote as follows from Cotulla v. Urbahn (Tex. Civ. App.) 126 S. W. 13, 14, where the court thus defined the proper practice, after a plea of limitation has been sustained:

"The proper practice was for the plaintiff to allege by supplemental petition any facts in reply which would, if true, defeat such plea."

See, also, district and county court rule No. 5; district and county court rule No. 10; district and county court rule No. 15; Pierce v. Allen (Tex. Civ. App.) 278 S. W. 453; Mooers v. Hunter (Tex. Civ. App.) 45 S.W. (2d) 387.

■ We overrule appellee's counterpropositions against appellant's reply to its supplemental petition, to the effect that by his reply appellant abandoned the issue of limitation. For the purposes of this opinion, we accept appellant's construction of his pleadings that, in fact, he did present to the trial court his exceptions and plea of limitations, and that this pleading is sufficient to support his propositions of limitation, presented upon this appeal.

■ The issue of estoppel was submitted to the jury by the following question, answered in the affirmative:

"Do you find from a preponderance of the evidence that prior to March 16, 1927, that the Directors of the First National Bank of Hemphill, acting for said Bank, at his request, entrusted to the defendant, W. F. Goodrich the handling and direction of the collection of the J. B. Lewis line of indebtedness to said bank, represented at that time by the note sued upon, signed by Mrs. Cynthia Toole and himself as surety for $5,000.00, dated February 19, 1926, due six months after date and payable to the First National Bank of Hemphill?"

This was the only question submitted to the jury.

There is no merit in appellant's exception to this issue that it was "on the weight of the evidence." The further exception is made that the issue was "multifarious and duplicitous." This exception is also overruled. The only controverted issue submitted by this question was whether or not at his request appellee intrusted to appellant, Goodrich, "the handling and direction of the collection of the J. B. Lewis line of indebtedness." On this statement, appellant was not injured by the form of the question. In Wood v. Williams (Tex. Civ. App.) 46 S.W.(2d) 332, 334, discussing this very proposition, the court said, citing Kansas City, M. & O. Railway Co. v. Blackstone & Slaughter (Tex. Civ. App.) 217 S. W. 208: "Appellants could not have been injured by the combination of the disputed issue with the undisputed one."

■ Appellant erroneously asserts that the judgment of the court in excess of $3,000 was fundamentally erroneous. The point is that, in the ad damnum clause of its petition, appellee claimed only $3,000. The facts pleaded in the petition clearly constituted a cause of action for the full amount of the judgment. The law of this proposition was thus stated in McCaulley v. Farmers' & Merchants' State Bank & Trust Co. (Tex. Civ. App.) 175 S. W. 728:

"Though the amount stated in the ad damnum clause is less, judgment may be rendered for the amount due, calculated according to the terms of the notes sued on, fully described in the petition.

" * * * It is well settled by the authorities that the real amount in controversy is to be determined by the amount shown to be due under the facts well pleaded, and that the ad damnum clause in the petition is not controlling."

■ Appellant seriously contends that appellee did not prove title to the note sued upon. The note was executed to "The First National Bank of Hemphill"; the suit was by "First National Bank in Hemphill," claiming ownership of the note. There was no indorsement on the note or writing attached thereto, transferring it from the original payee to appellee. Such an indorsement or writing was not necessary to vest title in appellee under the provisions of the Negotiable Instrument Act, article 5934, § 49, R. S. 1925.

■ In support of its title appellee offered in evidence the minutes of the First National Bank of Hemphill and its own minutes, reflecting the following facts and circumstances. Because of its insolvency the comptroller of the currency took charge of the First National Bank of Hemphill which, by the recitations of its minutes, was restored to solvency by contributions made by its depositors and others "for the purpose of having its business transferred to, and taken over by the First National Bank in Hemphill, a new bank organized for this purpose"; resolutions were passed by the First National Bank of Hemphill authorizing the transfer of its assets to appellee, First National Bank in Hemphill, and authorizing and empowering its president and its other authorized officers to enter into and execute the proper contract in writing transferring its assets to appellee. Appellee's minutes reflected a resolution of its board of directors authorizing it to purchase "the assets of The First National Bank of Hemphill." Appellee introduced "a ratification and approval and confirmation of the above sale and contract by the stockholders of The First National Bank of Hemphill." Appellee then introduced a written contract whereby the First National Bank of Hemphill transferred to it "all of its properties and assets"; it was recited in this contract that the First National Bank of Hemphill "has been restored to solvency." Appellant reserved certain exceptions in the trial court to the admission of this testimony, but such exceptions are not brought forward in his brief. Appellant's second proposition in support of the assignment that appellee did not show title to the note is that the facts and circumstances, as recited above, were insufficient to vest appellee with title. This contention is overruled. The evidence clearly raised the issue in appellee's favor and there was no controverting testimony whatever. Appellant is correct in saying that appellee offered no direct evidence that the comptroller ever released his control of the First National Bank of Hemphill, or consented to the assignment of its assets to the First National Bank in Hemphill, but the circumstances clearly raised the issue that the transaction was consummated with his approval.

■■ On the trial A. M. Jones, who for many years had been a director of the First National Bank of Hemphill, and was its vice president and a member of the board from 1923 to 1929, was permitted to testify that "the other members of the board had confidence in Mr. Goodrich as to his ability and integrity in looking after the affairs of the bank." There is no merit in the contention that this testimony was a mere opinion of

Mr. Jones. Having worked with the board and with Mr. Goodrich for so many years, he was qualified to testify as a fact whether or not the other directors had confidence in appellant's ability and integrity to look "after the affairs of the bank." R. A. Smith, the liquidating agent of the First National Bank of Hemphill, was permitted to testify as to the contents of the account books and records of the bank. No error is shown by this ruling of the court, inasmuch as the books themselves were offered in evidence and from the books the true status of the J. B. Lewis line of indebtedness was exhibited to the jury; also, as we understand the testimony, one of appellant's own witnesses testified to the nature and character of the J. B. Lewis line of indebtedness.

Appellant makes the following contentions against the sufficiency of the facts pleaded by appellee to constitute estoppel: (a) The agreement between the bank and appellant, whereby appellant was to take charge of and manage the collection of the note was "contrary to public policy and void and unenforceable"; (b) appellant could not conduct the litigation for the bank through other counsel and, therefore, was not responsible for any acts of omission by counsel selected by him to represent the bank, the attorneys thus selected being agents "solely of such plaintiff"; (c) the bank had knowledge that appellant had selected attorneys for it and accepted their services, thereby "relieving this defendant of any liability whatsoever in reference to the conduct of such suit"; (d) appellee had no cause of action against appellant without first alleging and proving the insolvency of the J. B. Lewis estate and of Mrs. Cynthia (Lewis) Toole; (e) the mere verbal promise by appellant, which appellee pleaded as tolling the statute, "cannot constitute the basis of the plea of estoppel against the subsequent pleading of limitation by the debtor." All these contentions are overruled.

■ Appellee was not granted affirmative relief upon the representations made to it by appellant, but the judgment of the court was merely to the effect that by reason of such representations appellant was estopped to plead against appellee the issue of limitation.

The rule is "a party is estopped whenever he has gained an undue advantage, and has caused his adversary a loss or injury." Johnson v. Byler, 38 Tex. 606. So the validity of the contract, and whether or not appellant could be held responsible for the omissions of counsel selected by him, was not the inquiry. The issue was whether or not, by such conduct appellant misled the bank and caused it to believe that he was protecting its rights in the note.

■ The facts of the case deny appellant's contention that the First National Bank of Hemphill had knowledge that counsel selected by him was representing it, independent of his control. The issue was clearly raised that appellant controlled that litigation from the time the notes were intrusted to him, and that counsel selected by him managed and controlled the litigation under his advice, and that nothing was done in the conduct of the litigation except with his consent and under his direction.

■ The solvency or insolvency of the J. B. Lewis estate and of his widow constituted an immaterial inquiry. Under all the facts, the note herein sued upon was barred by limitation as against them, which was the ruling of the court below, and against which there is no complaint in this court.

■ There is no merit in contention (e), supra. It was not the contention of appellee that the note sued upon was renewed and extended by the verbal promise of appellant, but merely that, by his acts and conduct in relation to the note, he had estopped himself to plead limitation.

■ It is our conclusion that the issue submitted to the jury was raised by appellee's pleadings and evidence, and that the jury's answer thereto has full support in the evidence. As appellant was, by this question and the jury's answer, estopped to plead the issue of limitation it follows that appellee was entitled to judgment upon the note sued upon, as described in its original petition, which was the very judgment rendered against him and from which he has prosecuted this appeal. Therefore, the judgment of the lower court is in all things affirmed.