Jerry A. WATERS, Appellant,

v.

Patsy S. WATERS, Appellee.

No. 721.

Court of Civil Appeals of Texas, Tyler.

July 19, 1973.

Rehearing Denied Aug. 30, 1973.

Duke Taylor, Center, for appellant.

Joe Davis Foster, Center, for appellee.

DUNAGAN, Chief Justice.

Appellee, Patsy S. Waters, brought this suit against appellant, Jerry A. Waters, on a written agreement and contract concerning a certain promissory note whereby appellant had agreed to pay a sum certain to appellee on a certain date, bearing a specified interest and renewal of said note. The agreement was made as a part of the property settlement and division of property when the parties were divorced.

Appellant had executed a demand note payable to the order of appellee's father, Jim Still. The appellant and appellee were involved in a divorce proceeding. Appellant and appellee, by contract in writing, agreed as part of the settlement of their property rights and obligations, that the demand note would be transferred to appellee and appellant would pay a stated sum to appellee at a stated time in order not to pay the demand note at that time. Appellant obtained delayed payment of the demand note in return for his promise to pay a stipulated, specified and agreed amount to appellee at a later time. Appellant thus obtained the benefit of delaying, for a substantial time, payments of a demand obligation mentioned in such agreement, and the further benefit of a fixed time of payment, as opposed to payment on demand at a much lower interest rate. Appellee surrendered the right to collect the demand obligation in return for appellant's promise to pay. Both conferred such benefits as a part of their property division. The note referred to in the agree-

ment was given and transferred to appellee by her father as contemplated by the agreement. Nothing was said about the contract-agreement for four years. When the due date arrived, payment was demanded and appellant did not pay, which resulted in this suit being filed. In his answer appellant for the first time alleged a mistake was made in arriving at the figure he agreed to pay. Appellee says there was no mistake, and in fact very accurately stated the basis for the agreement as: "We just came to a round figure of what he would pay in four years. Not based on what was owed * * * but what he would pay so he didn't have to pay anything right then." Appellant admitted that the mistake he alleges was discovered within the thirty days of the execution of the agreement and he took no action because he was not ready to pay and remained silent for four years after he decided the amount was wrong.

Appellant, before suit, delivered a check to appellee for an amount less than demanded by appellee but alleged by appellant as the correct amount due. Appellee refused the check and it was returned to appellant. After suit was filed, appellant paid into the registry of the court an amount he alleged to be the amount due, which amount was less than the demand by appellee and less than the judgment rendered by the trial court.

Trial was before the court without a jury. Judgment was rendered for the appellee in the sum of $4,656.44, plus interest thereon from July 7, 1972, to the date of the judgment at the rate of 4% per annum and also provided for interest on the entire sum at the rate of 6% per annum from the date of the judgment until paid. The judgment further provided that the money paid into the registry of the court by the appellant be paid to the appellee and that such amount be credited against the judgment.

Findings of fact and conclusions of law were filed in response to a request by appellant. No additional findings were requested. The record also contains a statement of facts which is before this court.

Appellant by his points of error challenges the trial court's findings numbers 2, 6, 7, 12, 15, 16 and 17. Also he challenges the court's conclusions of law numbers 1, 2, 3, 4, 5, 6 and 8.

The court's findings of fact and conclusions of law, omitting the formal parts, are as follows:

## "FINDINGS OF FACT

1. On May 25, 1968, plaintiff and defendant executed an instrument in writing, in the presence of each other and in the presence of, and each with the advice of their attorneys, styled 'Memorandum Agreement and Renewal of Note,' which was admitted in evidence herein as Plaintiff's Exhibit No. 1.

2. Such instrument was prepared by the attorney for the defendant.

3. By Such instrument the plaintiff and defendant agreed that as of June 1, 1968, the total sum, principal and interest, due on a certain note described therein, to-wit: a certain promissory note executed by defendant, payable on demand to Jim Still in the original principal amount of FIVE THOUSAND DOLLARS ($5,000.00), was FOUR THOUSAND DOLLARS ($4,000.00), and that such total sum due, to-wit, FOUR THOUSAND DOLLARS ($4,000.00) would bear interest from June 1, 1968 at the rate of four per cent (4%) per annum and would be due on June 1, 1972; that defendant could make partial payments of either principal or interest at any time prior to the due date; that defendant could prepay the entire amount due; that the original $5,000.00 note was extended and renewed to be due and payable as set out in such instrument, and that such note would be transferred to plaintiff.

4. Such written instrument did not provide for the payment of attorney's

fees, but the note renewed and extended thereby provided for attorney's fees of ten per cent (10%) of the amount due thereunder.

5. Such written instrument, by agreement, established the amount due on the demand obligation of defendant, changed the terms of payment of such obligation from 'demand' to a term certain, to-wit 'due on June 1, 1972,' and recognized that transfer of such obligation would be made to plaintiff.

6. The amount agreed upon in such written instrument as the total sum that would be due on June 1, 1968, to-wit, $4,000.00, was arrived at by agreement of the plaintiff and defendant based on the amount defendant would pay in four years, to-wit, on June 1, 1972, plus four per cent (4%) per annum interest, to avoid and defer payment of a demand obligation owed by defendant and to settle and divide the property rights of the parties, and such amount was not based, or intended to be based, on the amount due on the original $5,000.00 note as shown on the face of such note.

7. No computations of the amount due on the original $5,000.00 note were requested to be made by defendant.

8. Defendant did not request to see the original $5,000.00 note prior to, or at the time such written instrument was executed.

9. Entries on the face of the original $5,000.00 note were not made by plaintiff.

10. Plaintiff and defendant were engaged in a divorce proceeding at the time such written instrument was executed, and such written instrument was executed as a part of their property settlement.

11. The consideration for the execution of such written instrument was the deferment and rearrangement of payment of a demand obligation owed by defendant and the settlement of property rights of the parties.

12. Defendant did not rely on any information furnished by plaintiff as to the amount due on the original $5,000.00 note. Plaintiff did not withhold or conceal information on the note from defendant, nor mislead him as to the amount due. The parties dealt at arms length with each other in the agreement made and with the advice of counsel, who were close at hand.

13. Within one month after such written instrument was executed defendant reviewed the original note and decided it was not as he thought it was, but he did not notify plaintiff because he was not ready to pay the note, and under the written agreement it was not due for four years. Defendant never notified plaintiff until written demand for payment was made after June 1, 1972, that he did not intend to pay the amount as agreed in such written instrument.

14. Plaintiff relied to her detriment on the agreements set out in the written instrument by foregoing collection under a demand obligation, in arriving at a property settlement in the divorce proceedings, and by accepting a scholarship grant instead of a more lucrative teaching position.

15. Jim Still, payee in the original note described in such written instrument, was the father of plaintiff, and he died shortly after the execution of such written instrument. Prior to his death, and after the execution of such written instrument, Jim Still gave the original $5,000.00 note to plaintiff, intending to invest plaintiff with ownership thereof, and delivered such note to plaintiff. Plaintiff has had such note since such time in her possession.

16. No payments have been made by defendant on the written instrument or the note since such written instrument was executed.

17. Demand for payment under such written instrument was made by plaintiff and by her attorney, in writing. Defendant refused payment.

18. Suit was filed on the written instrument on July 27, 1972, and defendant paid into the registry of the court $3,297.43 on August 11, 1972."

"CONCLUSIONS OF LAW

1. The instrument in writing admitted herein as Plaintiff's Exhibit No. 1 was executed by plaintiff and defendant for a valid and valuable consideration.

2. Such agreement was not executed by mutual mistake, there being no mistake as to the amount agreed to be paid, such amount being negotiated by the parties and not based on any mistake as to the amount due as shown on the face of the original note.

3. There has been no failure of consideration under the agreement.

4. Plaintiff is the owner and holder of the original $5,000.00 note.

5. Defendant is estopped to complain of any mistake because he failed to take any action for four years after the discovery of the alleged mistake. Defendant is also barred by the doctrine of laches having sat by and said nothing.

6. The payment by defendant into the registry of the court of an amount less than the amount due was ineffectual as a tender and did not cut off any recovery for interest on the entire amount due.

7. There being no provision for payment of attorney's fees in the written instrument, and suit being on such instrument, plaintiff is not entitled to the recovery of attorney's fees.

8. Plaintiff should recover $4,656.44 plus interest thereon from July 7, 1972, to December 20, 1972, at the rate of four per cent (4%) per annum, together with interest on the entire judgment from December 20, 1972, at the rate of six per cent (6%) per annum."

The trial judge, as the trier of the facts in this cause, was the judge of the credibility of the witnesses and of the weight to be given their testimony. Hayes v. Easter, 437 S.W.2d 652 (Tex.Civ.App., Texarkana, 1968, n. w. h.); and Black v. Shell Oil Company, 397 S.W.2d 877 (Tex. Civ.App., Texarkana, 1965, writ ref., n. r. e.).

In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. State v. Williamson-Dickie Mfg. Co., 399 S.W.2d 568 (Tex.Civ.App., Fort Worth, 1966, writ ref., n. r. e.) and Brown v. Frontier Theatres, Inc., 369 S. W.2d 299 (Tex.1963).

It is the established law that in a non-jury case the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony, and that even though the evidence is conflicting, where there be evidence of probative force, the findings of the trial court will not be disturbed. Curtis v. Curtis, 473 S. W.2d 636 (Tex.Civ.App., Tyler, 1971, writ ref., n. r. e.).

Appellant contends that the trial court erred in finding that Jim Still, the payee, gave the note to appellee intending to vest appellee with ownership thereof and that such note was delivered to the appellee. Appellant further contends that the trial court erred in concluding as a matter of law that there was no failure of consideration under the agreement and that the appellee is the owner and holder of the original note.

Consideration was shown by the settlement of the parties' property rights, by the extended time for payment of an obligation and more liberal terms for its

discharge. Every written contract is deemed to import a consideration for its execution until the contrary appears.

Appellant agreed in writing to pay a specific sum at a specified time to delay payment of a demand note at the time of, and as a part of, a property settlement and thereby appellant received consideration for the settlement agreement and contract. Black v. Frank Paxton Lumber Company, 405 S.W.2d 412 (Tex.Civ.App., Dallas, 1966, writ ref., n. r. e.) and 13 Tex.Jur.2d, sec. 42, p. 171.

Appellant contends that there was no evidence of probative force that the appellee is the owner of said note. The note does not bear the endorsement of Jim Still. However, the appellee, Mrs. Patsy Waters, testified that her father gave her the note with the statement that it was hers and she could collect same. The evidence shows that she was in possession of the note.

This evidence is before us undisputed. This evidence shows a fulfillment of the provisions of the settlement contract "that the note is presently payable to Jim Still, but will be transferred to Patsy A. Waters (appellee) in the future." The settlement contract did not set out or provide in what manner the note was to be transferred to the appellee, Patsy Waters, nor did it attempt to do so.

A promissory note can lawfully be transferred without a written assignment or an endorsement of the legal owner and holder thereof. 11 Am.Jur.2d, Bills and Notes, secs. 369 and 373; First National Bank in Dallas v. Lampman, 442 S.W.2d 858 (Tex.Civ.App., Eastland, 1969, writ ref., n. r. e.); West v. Citizens State Bank of Wheeler, 140 S.W.2d 868 (Tex.Civ. App., Amarillo, 1940, dismissed, judgment correct); Security Nat. Bank v. Morgan, 245 S.W. 455 (Tex.Civ.App., Dallas, 1922, writ ref.). It has been held under the old "negotiable instrument act," that an endorsement on note by payee or writing at-

tached thereto was unnecessary to vest title thereto in the owner and holder. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600 (1951); Warren v. Schawe, 163 S.W.2d 415 (Tex.Civ.App., Austin, 1942, writ ref.); Goodrich v. First Nat. Bank in Hemphill, 70 S.W.2d 609 (Tex.Civ.App., Beaumont, 1934, writ ref.); Clark v. Gurley, 48 Tex.Civ.App. 274, 106 S.W. 394 (1907, n. w. h.). The "negotiable instrument act" was repealed and is now a part of the "Business and Commercial Code." Under Sec. 3.201, Vol. 2, Business and Commerce Code, V.T.C.A., which deals with "transfer" and "right to endorsement," is found this statement:

*"Purposes of Changes and New Matter:* To make it clear that:

"1. The section applies to any transfer, whether by a holder or not. Any person who transfers an instrument transfers whatever rights he has in it. The transferee acquires those rights even though they do not amount to 'title.'

"2. The transfer of rights is not limited to transfers for value. An instrument may be transferred as a gift, and the donee acquires whatever rights the donor had."

It would appear there has been no change in the law, in this respect, since the decisions in the cases immediately cited above.

Delivery by a donor to donee of a promissory note payable to donor with intent to invest the donee with ownership is an effective gift of the note and transfer thereof. The gift to appellee from her father did not require a written transfer. Appellant by the settlement agreement and contract agreed for the note to be transferred to appellee and knew that such transfer was to be made and that no particular method for such transfer was provided. Title passes by oral gift. 27 Tex. Jur.2d, sec. 24, p. 168; 38 Am.Jur.2d, Gifts, secs. 45 and 54; Bridewell v. Clay, 185 S.W.2d 170 (Tex.Civ.App., Dallas,

1944, writ ref.). Appellant relies on Sec. 3:201(c),[1] Vol. 2 of the Business and Commerce Code, V.T.C.A.

In Anderson Uniform Commercial Code, Vol. 2, sec. 3.201:10, p. 752, in discussing sec. 3.201:10, Vol. 2 of Business and Commerce Code, V.T.C.A., we find these statements:

"Under the pre-Code law there was uncertainty as to the nature of the title received by the transferee of a negotiable instrument without indorsement; that is, as to whether he received a legal title or merely the equitable title to the paper.

"It is believed that, although the Code does not make any express determination of this issue, the transferee acquires legal title because the 'transfer of an instrument vests in the transferee such rights as the transferor has therein * * *.'

"The fact that the transferee for value is given a specifically enforceable right to obtain the missing indorsement should not lead to the conclusion that prior to that time the transferee necessarily has merely equitable title. The only conclusion that must necessarily be drawn from the right to obtain the indorsement is that prior to obtaining the indorsement the transferee is not the 'holder,' for, as stated, 'negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.' This statement is merely that the transferee is not the holder and must affirmatively prove that he is the 'owner.' There is no statement that he is not the owner nor that he is not the owner of the rights of

the transferor, namely, ownership of the legal title to the paper."

Sec. 201:12 reads as follows:

"The fact that a transferee lacking a necessary indorsement is not the holder does not mean that the transferee cannot establish his right as assignee and enforce the obligation. To the contrary, a transferee although he has neglected to obtain the indorsement necessary to make him a holder may enforce a note, foreclosure on collateral, and obtain a deficiency judgment against the debtor."

Upon a careful review of the entire record, we find ample, competent and legal evidence which supports the trial court's findings of fact, conclusions of law and judgment. Where there is evidence of probative force to support the trial court's findings, such findings are binding upon the appellate court, and in passing upon such question the appellate court must consider only the evidence favorable to the findings and reject all evidence to the contrary. Holloway v. Allison, 494 S.W.2d 612 (Tex.Civ.App., Tyler, 1973, n. w. h.); Curtis v. Curtis, supra, and cases cited therein; Holley v. Painters Local Union No. 318, 376 S.W.2d 44 (Tex.Civ.App., Fort Worth, 1964, writ ref., n. r. e.); Frazier v. Williams, 359 S.W.2d 213 (Tex. Civ.App., Eastland, 1962, n. w. h.); Campbell v. Swinney, 328 S.W.2d 330, 334 (Tex.Civ.App., Dallas, 1959, writ ref., n. r. e.); Wilson v. Teague Independent School District, 251 S.W.2d 263, 268 (Tex.Civ. App., Waco, 1952, writ ref.); Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286 (1951); See 38 Am.Jur.2d, Gifts, sec. 108. Each of appellant's points of error is overruled.

The trial court's judgment is affirmed.

Affirmed.

1. "Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner."