Opinion Issued August 26, 2004 
















     
In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00047-CV




DONALD RAY LEAVINGS, Appellant

V.

JIM MILLS, INDIVIDUALLY AND D/B/A MULTIMORTGAGE
BANCORP., Appellees




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 99990




OPINION ON MOTION FOR REHEARING

          The court has considered appellees’ motion for rehearing in this case and is of
the opinion that the motion should be denied. However, we withdraw our opinion
and judgment dated April 29, 2004 and substitute those issued today.
          Appellant, Donald Ray Leavings (Leavings), challenges the trial court’s
rendition of summary judgment in favor of appellees, Jim Mills, individually and
d/b/a Multimortgage Bancorp. (collectively Mills), in a suit for (1) removal of an
encumbrance on property owned by Leavings resulting from Mills’ enforcement of
a trust deed pursuant to a note granting a security interest in the property; (2)
declaratory judgment; (3) deceptive trade practices violations; and (4) usury. In three
issues, appellant contends the trial court erred in rendering summary judgment and
awarding Mills the right to foreclose on Leavings’ property because Mills failed to
establish as a matter of law that he was the owner or holder of the note and entitled
to recover the amount due on the note. We reverse and remand.
Background
          In November 1984, John E. Leavings and his wife Evelyn Fay Leavings, both
elderly and now deceased, entered into a home improvement contract with Solar
Marketing Corporation. The contract called for the installation of a home
improvement solar heating system. On November 15, 1984, the Leavings executed
a retail installment contract in which they agreed to pay Solar Marketing $8,495 for
the heating system at 16.5% interest per annum, payable in 120 installments of
$146.82 each beginning 60 days from the date the Completion Certificate was signed,
which was estimated to be December 15, 1984. The record also includes a
“Completion Certificate for Property Improvement Loan Work Done or Materials
Delivered,” dated December 10, 1984, and signed by the Leavings and Solar
Marketing, confirming completion of the work. 



          The retail installment contract stated that Solar Marketing would retain a
security interest in the tank, pipes, and valves of the solar water heating system and
that a mechanic’s and materialman’s lien would be placed on the Leavings’ residence.
It also specifically stated, “Any holder of this consumer credit contract is subject to
all claims and defenses which the debtor could assert against the seller of goods or
services obtained pursuant hereto or with the proceeds hereof.” The reverse side of
the retail installment contract contains additional terms and conditions. To secure
payment of the retail installment contract , the Leavings also executed a “Contract for
Labor and Materials and Trust Deed” (the trust deed) on November 15, 1984. 
          On November 21, 1984, Solar Marketing executed an assignment of the note
described in the retail installment contract, “together with all liens existing to secure
its payment,” to Briercroft Service Corporation.


 On December 11, 1984, the day
after the Leavings and Solar Marketing executed the completion certificate, 
Briercroft Service Corporation assigned the note, “together with all liens existing to
secure its payment,” to Briercroft Savings Association. On December 18, Briercroft
Savings Association filed the trust deed and a document reflecting the transfers of the
note and the trust deed from Solar Marketing to Briercroft Service Corporation and
from Briercroft Service Corporation to Briercroft Savings Association in the Official
Records of Fort Bend County at volume 1577, pages 372 and 373.
          In 1987, after repeated problems with the heating system, the Leavings ceased
making payments on their note. In October 1987, they received a letter from a law
firm representing Briercroft Service Corporation, which noted that Briercroft had
entered into a settlement agreement with the Texas Attorney General regarding
Briercroft’s alleged derivative liability resulting from its loan customers’ transactions
with Solar Marketing Corporation. Briercroft extended the terms of the settlement
agreement to the Leavings, but they refused the offer and sent a counteroffer to
Briercroft. Briercroft ignored the counteroffer, and the Leavings did not further
pursue it.
          In March 1989, the Leavings received a letter from Briercroft Service
Corporation advising them that their note was in default, demanding past due
payments and interest, and threatening to foreclose on their home. The Leavings’
attorney responded, and Briercroft did not further pursue its demand at that time.
          In May 1997 (after Mr. Leavings’ death), Evelyn Fay Leavings received a letter
from “Trustees of Texas,” signed by James C. Mills as “substitute trustee,” claiming
that the Leavings’ note had fully matured, demanding payment in the amount of
$21,196, and threatening to foreclose on their home. After receiving the letter,
Evelyn Fay Leavings filed suit against Mills as substitute trustee and other substitute
trustees to enjoin the threatened foreclosure.


 The trial court granted the temporary
injunction on June 6, 1997. In February 1998, Mills filed a counterclaim, seeking an
order of possession and foreclosure, and claiming that he was the owner and holder
of the note executed by the Leavings, which he had purchased from the receiver of
Briercroft Savings Association. 
          On June 26, 2002, Mills filed a motion for summary judgment that forms the
basis of this appeal. In the motion, Mills stated that he was the owner and holder of
the Leavings’ note, dated November 15, 1984, which was secured by a lien on the
Leavings’ real property. Mills stated, “The Leavings’ obligation was held by the
Briercroft Saving and Loan Association [sic] which was eventually taken over by the
FSLIC and OTS, who sold the note through the RTC.” Mills claimed the note was
due in full on February 10, 1995, and the amount due on the note as of June 21, 2002
was $73,572.63. 
          In support of his motion, Mills attached, as Exhibit 1, his affidavit attesting that
the facts stated in his motion for summary judgment were true and correct and
attesting that his affidavit exhibits A-F were “true and correct copies of the Retail
Installment ‘Contract’; Contract for Labor and Material and Trust Deed; ‘Completion
Certificate’; and assignments thereof.” In his motion, Mills stated that these
documents constitute “all signed documents from (builder) [sic] to final owner,
JAMES C. MILLS.” Mills further attested in his affidavit that the original of each
of these documents had been filed with the trial court.
          Exhibits A through D to the Mills affidavit include (A) the Leavings’ retail
installment contract; (B) the trust deed and the 1984 assignments of the Leavings’
note and trust deed from Solar Marketing to Briercroft Service Corporation and from
Briercroft Service Corporation to Briercroft Savings Association, as filed at volume
1577, pages 372 and 373 of the Official Records of Fort Bend County; (C) the
completion certificate; and (D) a “Notice of Right to Cancel the Retail Installment
Contract,” executed on November 15, 1984.
          Exhibit E to Mills’ affidavit is a “Transfer and Assignment Agreement” dated
October 23, 1995, between Briercroft Service Corporation, as “owner and holder of
that certain Loan and the Liens securing the same,” and Old Republic Insured
Financial Acceptance Corporation. The agreement assigns to Old Republic all of
Briercroft Service Corporation’s “right, title and interest” in the loan and liens
described in an attached exhibit as the Leavings’ “National Housing Act Loan Under
Title I” and the trust deed recorded at volume 1577, page 372 of the Official Records
of Fort Bend County. The transfer and assignment agreement is signed by Jon G.
Moyer for Briercroft Service Corporation and states that the assignment is made
pursuant to “that certain Loan Sale Agreement dated October 23, 1995,” and
“pursuant to the terms and conditions of said Loan Sale Agreement.” The assignment
is marked as filed and recorded in the official records of Fort Bend County on
December 14, 1995.
          Exhibit 3 to the motion for summary judgment supports Exhibit E to Mills’
affidavit. Exhibit 3 is the affidavit of Daniel Bell, Resolution Specialist for the
Federal Deposit Insurance Corporation (FDIC) as successor to the Resolution Trust
Corporation (RTC). It attests that Jon G. Moyer had full authority to execute “the
attached copy of the Transfer and Assignment Agreement recorded in the public real
estate records of Fort Bend County, Texas.” The Bell affidavit then identifies the
October 23, 1995 Loan Sale Agreement as an agreement between Briercroft Service
Corporation and the RTC as Receiver for Beacon Federal Savings Association, as
sellers, and Old Republic, as purchaser, and states that the Loan Sale Agreement is
“permanently recorded with the Resolution Trust Corporation as RTC Master
Contract Nos. 37624 (Beacon) & 37625 (Briercroft) and stored as Case # DOSSWF-SA-5615.” However, the Loan Sale Agreement is not attached either to Exhibit “E”
to Mills’ affidavit or to Bell’s affidavit.



          Exhibit “F” to Mills’ summary judgment affidavit is an assignment of the trust
deed from Old Republic to Multimortgage Bancorp. dated December 6, 1996. There
is no assignment from Multimortgage Bancorp. to Mills; but Mills testifies in his
affidavit, “I am the owner of Multimortgage Bancorp.”; he avers in his motion for
summary judgment that Exhibit 2 to his motion, the affidavit of JoAllyn Comstock,
the records keeper of Old Republic, “attest[s] to sale and assignment” of the
Leavings’ note to him. However, no transfer of the note to Mills or to Multimortgage
Bancorp. is referenced in the Comstock affidavit. That affidavit, dated January 24,
2002, merely states, “The document attached to this affidavit is a true and correct
copy of the Loan Sale Agreement of October 23, 1995 between Briercroft Service
Corporation and the Resolution Trust Corporation as Receiver for Beacon Federal
Savings Association as sellers and Old Republic Insured Financial Acceptance
Corporation as purchaser, that is a permanent part of the files and records of Old
Republic Insured Financial Acceptance Corporation.” Again, no copy of the Loan
Sale Agreement is attached to the Comstock affidavit. The only reference to Mills
or Multimortage Bancorp. in the Comstock Affidavit is the statement, “I am fully
aware that this affidavit will become a permanent part of the records of James C.
Mills and MultiMortgage BanCorp [sic] and as such will be used as an exhibit in a
Court of Law.”
          The summary judgment evidence concludes with Exhibit 4 to the motion for
summary judgment, the fee affidavit of Mills’ attorney, Lester R. Buzbee, III.



          On August 5, 2002, the trial court heard and granted Mills’ motion for
summary judgment. On October 1, 2002, the trial court signed the final summary
judgment. The judgment ordered that Mills was entitled to foreclose his lien on the
Leavings’ property “as owner and holder of the Contract and Deed of Trust” executed
by the Leavings; it awarded Mills a judgment against the Estate of Evelyn Fay
Leavings in the amount of $73,572.63 with a per diem rate of $33.25 until paid; and
it awarded Mills $25,000 in attorney’s fees. This appeal followed.
Discussion
Standard of Review
          A party moving for summary judgment has the burden of proving that there is
no genuine issue of material fact and that it is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985). To be entitled to summary judgment as a plaintiff, a movant must prove each
element of its claim as a matter of law. See Nixon, 690 S.W.2d at 548; Geiselman v.
Cramer Fin. Group, Inc., 965 S.W.2d 532, 535 (Tex. App.—Houston [14th Dist.]
1997, no writ); Al’s Formal Wear of Houston, Inc. v. Sun, 869 S.W.2d 442, 444 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). In deciding whether a disputed
material fact issue exists, we accept as true evidence favorable to the non-movant and
indulge every reasonable inference and resolve any doubts in the non-movant’s favor. 
Id. at 548-49. In its order granting summary judgment for Mills, the trial court did
not state the specific grounds for its ruling. Therefore, we will affirm if any of the
theories advanced in Mills’ summary judgment motion is meritorious. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989). 
 
          Owner or Holder of Note
          In his first issue presented, appellant argues that the summary judgment proof
fails to establish that Mills is the owner or holder of the Leavings’ note. 
          To prevail on a summary judgment motion, a party seeking to enforce a note
must prove (1) that a certain note is in question, (2) that the party sued signed the
note, (3) that the plaintiff is the owner or holder of the note, and (4) that a certain
balance is due and owing on the note. SMS Fin., LLC v. ABCO Homes, Inc., 167 F.3d
235, 238 (5th Cir. 1999); Bean v. Bluebonnet Sav. Bank FSB, 884 S.W.2d 520, 522
(Tex. App.—Dallas 1994, no writ); Clark v. Dedina, 658 S.W.2d 293, 295 (Tex.
App.—Houston [1st Dist.] 1983, writ dism’d). 
          Appellant contends that Mills failed to prove that he was the owner or holder
of the note, a prerequisite to establishing his entitlement to damages and his right to
foreclose on the Leavings’ property. 
          A holder is “the person in possession of a negotiable instrument that is payable
either to bearer or to an identified person that is the person in possession.” Tex. Bus.
& Comm. Code Ann. § 1.201(21) (Vernon Supp. 2004); SMS Fin., 167 F.3d at 238. 
When an instrument is payable to an identifiable person, the “holder” is the person
in possession if he is the identified person. Tex. Bus. & Comm. Code Ann.
§1.201(21); SMS Fin., 167 F.3d at 238. A holder of an instrument is a “[p]erson
entitled to enforce” an instrument. SMS Fin., 167 F.3d at 238.
          A person can become the holder of an instrument when the instrument is issued
to that person; or he can become a holder by negotiation. U.C.C. cmt. 1, Tex. Bus.
& Comm. Code Ann. § 3.201 (Vernon 2004). Negotiation is the “transfer of
possession of an instrument . . . by a person other than the issuer to a person who
thereby becomes its holder.” Tex. Bus. & Comm. Code Ann. § 3.201(a); SMS Fin.,
167 F.3d at 238. “[I]f an instrument is payable to an identified person, negotiation
requires transfer of possession of the instrument and its indorsement by the holder.” 
Tex. Bus. & Comm. Code Ann. § 3.201(b); SMS Financial, 167 F.3d at 238;
Jernigan v. Bank One, Tex., N.A., 803 S.W.2d 774, 776 (Tex. App.—Houston [14th
Dist.] 1991, no writ). The indorsement must be written by or on behalf of the holder
and on the instrument or on a paper so firmly affixed to it as to become part of it. 
Jernigan, 803 S.W.2d at 776. If an instrument not in the possession of the original
holder lacks a written indorsement and proof of the chain of title, the person in
possession does not have the status of a holder. See id. at 776-77. 
          A note may be transferred, however, even if it is not indorsed by the transferee;
in that case, the transferee acquires whatever rights the transferor had in the note, but
he does not become the holder. See Tex. Bus. & Comm. Code Ann. § 3.201; Waters
v. Waters, 498 S.W.2d 236, 241 (Tex. Civ. App.—Tyler 1973, writ ref’d n.r.e.). The
transfer of title of a negotiable instrument received by the transferee without
indorsement includes “‘such rights as the transferor has therein.’” Waters, 498
S.W.2d at 242 (quoting 2 Anderson Uniform Commercial Code, § 3.201:10, at
752). Thus, even if a person is not the holder of a note, he may still be able to prove
that he is the owner and entitled to enforce the note, foreclose on collateral and obtain
a deficiency judgment under common-law principles of assignment. Waters, 489
S.W. 2d at 242. A person not identified in a note who is seeking to enforce it as the
owner or holder must prove the transfer by which he acquired the note. Jernigan, 803
S.W.2d at 777; Priesmeyer, 917 S.W. 2d at 939. An issue of material fact on the
issue of ownership of a note is presented when there is an unexplained gap in the
chain of title. First Gibraltar Bank, FSB, v. Farley, 895 S.W.2d 425, 428-29 (Tex.
App.—San Antonio 1995, writ denied); Jernigan, 803 S.W.2d at 777.
          In this case, to prove his entitlement to summary judgment as the holder of the
Leavings’ note, Mills had the burden of proving, as a matter of law, that the retail
installment contract executed by the Leavings was the “note” referenced in each step
of the chain of title, that the note was a negotiable instrument made payable to Solar
Marketing, and that, by successive transfers of possession and indorsement, he
became the holder of the note and was entitled to enforce it. To prove his right to
foreclose on collateral and obtain a deficiency judgment as the owner of the note,
Mills was required to prove the note and an unbroken chain of assignments
transferring to him the right to enforce the note according to its terms. In either case,
he was required to prove an unbroken chain of title. We first determine the nature of
the note and of Mills’ claim of title.
          Nature of the Note
          Section 3.104 of the Texas Uniform Commercial Code defines a note as 
an unconditional promise or order to pay a fixed amount of money, with or
without interest or other charges described in the promise or order, if it:
(1) is payable to bearer or to order at the time it is issued or first comes
into possession of a holder;
(2) is payable on demand or at a definite time; and
(3) does not state any other undertaking or instruction by the person
promising or ordering payment to do any act in addition to the payment of
money, but the promise or order may contain
(A) an undertaking or power to give, maintain or protect collateral
to secure payment;
(B) an authorization or power to the holder to confess judgment
or realize on or dispose of collateral; or
(C) a waiver of the benefit of any law intended for the advantage
or protection of an obligor.

Tex. Bus. & Com. Code Ann. § 3.104(a) (Vernon 2002). A note so defined is a
negotiable instrument. Id. At the time the Leavings’ note was made, Texas law
provided:
Any writing to be a negotiable instrument within this chapter must
                    (1) be signed by the maker or drawer; and
(2) contain an unconditional promise or order to pay a sum certain in
money and no other promise, order, obligation or power given by the maker or
drawer except as authorized by this chapter; and
(3) be payable on demand or at a definite time; and
(4) be payable to order or bearer.

Tex. Bus. & Com. Code Ann. § 3.104(a) (Vernon 1996).


 Under both the prior and
the current version of section 3.104, a note must contain an unconditional promise to
pay a fixed amount of money on demand or at a definite time, and the note must be
payable to order or to bearer.
          In this case, the Leavings’ obligation to pay Solar Marketing was conditioned
in the retail installment contract upon the completion of the improvements described
in the instrument. Specifically, the contract states that payments are to begin “60 days
from date Completion Certificate (under FHA Title I) is signed by Buyer, which is
estimated to be December 15, 1984.” The contingency in the retail installment
contract is cured by the completion certificate executed by the Leavings and Solar
Marketing on December 10, 1984. In it, Solar Marketing certifies that “[a] copy of
the contract or sales agreement has been delivered to the borrower and to the above
financial institution,” i.e., Briercroft Service Corporation; that the work has been
satisfactorily completed; and that “this contract contains the whole agreement with
the borrower.” The retail installment contract and the completion certificate thus
merge and together constitute the note at issue in this litigation. See Fish v. Tandy
Corp., 948 S.W.2d 886, 898(Tex. App.—Fort Worth 1997, pet. denied) (merger
occurs when parties to earlier agreement enter into subsequent written integrated
agreement covering same subject matter). 
          The note consisting of the Leavings’ retail installment contract and completion
certificate is not a negotiable instrument, however, since it is not made payable either
“to bearer” or “to order” and, therefore, lacks an essential element of a negotiable
instrument. Ralls-Tex Mill, Inc. v. Plains White Truck Co., 446 S.W.2d 917, 919
(Tex. Civ. App. 1960, writ ref’d n.r.e.); Gen. Motors Acceptance Corp. v. Matson,
336 S.W.2d 628, 630 (Tex. Civ. App. 1960, no writ); see also Ins. Agency Managers
v. Gonzales, 578 S.W.2d 803, 805 (Tex. Civ. App.—Houston [1st Dist.] 1979, no
writ) (retail installment contract for home improvements was not negotiable
instrument). Since this is so, we need not determine whether the other terms and
conditions set out in the retail installment contract and completion certificate render
the note non-negotiable.


 
          Since the note is not a negotiable instrument, whenever Mills acquired it and
under whatever terms he acquired it, he is not a holder and, therefore, cannot be a
holder in due course entitled to take the instrument free of the Leavings’ claims and
defenses. Tex. Bus. & Comm. Code Ann. § 3.306 (Vernon 2004) (a person taking
an instrument, other than a person having rights of a holder in due course, takes
subject to claims against the instrument, including claims for rescission); see
Gonzales, 578 S.W.2d at 805 (such claims and defenses as maker of contract had
against contractor who performed work under retail installment contract could be
asserted against contractor’s assignee); Matson, 336 S.W.2d at 630 (where retail
installment contract given in part payment for automobile was not payable “to order”
or “to bearer,” it lacked essential element of negotiable instrument and was not
negotiable; therefore, assignee took it subject to any claims and defenses that could
be urged against payee).


 We turn, therefore, to whether Mills has established that
he is the owner of the note and entitled to enforce it against the Leavings, subject to
their claims and defenses.



          Ownership of the Note
          Mills has presented summary judgment proof establishing that the Leavings
executed both the note and the trust deed on November 14, 1985. He has also
presented summary judgment proof that Solar Marketing assigned the note and the
trust deed to Briercroft Service Corporation on November 21, 1984, which in turn, 
assigned them to Briercroft Savings Association on December 10, 1984. Briercroft
Savings Association then filed the trust deed in the real property records of Fort
Bend County on December 18, 1984.



          Mills relies on his own affidavit testimony and that of Bell and Comstock to
establish a chain of title to the Leavings’ note and trust deed. Under Texas law, the
transfer of a note may be proved by testimony rather than by documentation. 
Priesmeyer, 917 S.W. 2d at 939; Christian v. Univ. Fed. Sav. Ass’n, 792 S.W.2d 533,
534 (Tex. App.—Houston [1st Dist.] 1990, no writ). However, to support summary
judgment, affidavit testimony must affirmatively show that it is based on personal
knowledge; it must be admissible in evidence; and it is inadequate unless it
affirmatively shows that the affiant is competent to testify to the matters stated
therein. Tex. R. Civ. P. 166a(f). The mere recitation that an affidavit is based on
personal knowledge is inadequate if the affidavit does not positively show a basis
for such knowledge. Priesmeyer, 917 S. W.2d at 939-40; Geiselman, 965 S.W.2d
at 537. 
          In his own summary judgment affidavit, Mills testified that the facts in his
motion for summary judgment were true and correct, including the assertion that he
was “the owner and holder of a Retail Installment Contract and Contract for Labor
and Materials and Trust Deed dated November 15, 1984.” He also testified that the
copies of those documents attached to his affidavit were true and correct copies of
originals filed with the court. He further testified that the statement in the motion,
that “[t]he Leavings’ obligation was held by the Briercroft Savings and Loan
Association which was eventually taken over by the FSLIC and OTS who sold the
note through the RTC,” was true and correct. However, nothing in Mills’ affidavit
shows the basis for his knowledge of the facts to which he testifies, and it is
therefore, incompetent to prove these facts. See Priesmeyer, 917 S.W.2d at 939-40;
Geiselman, 965 S.W.2d at 537. 
          Moreover, the documents Mills testifies to do not show the chain of title of the
Leavings’ note from “builder” to himself. Nothing in the documents attached to
Mills’ affidavit shows how Briercroft Savings and Loan Association acquired the
Leavings’ note from Briercroft Savings Association or that these two entities are
really one and not two; and nothing shows how Briercroft Services Corporation
reacquired the note and thus had the capacity to transfer it to Old Republic. Nothing
shows that the FSLIC, FDIC, RTC, or OTS ever acquired the Leavings’ note or trust
deed, as Mills avers; and nothing shows the basis for Mills’ knowledge of the facts
giving rise to his claim of such ownership. 
          Apparently recognizing the deficiencies in his proof, Mill attached to his
summary judgment motion the Bell Affidavit. In that affidavit, Bell testifies that he
is a “Resolution Specialist” for the FDIC as successor to the RTC, that he has
examined “the attached copy of the Transfer and Assignment Agreement recorded
in the public real estate records of Fort Bend County, Texas,” that that agreement
was signed by Jon G. Moyer for Briercroft Service Corporation, that Moyer had full
authority to execute the transfer agreement, and that “the Loan Sale Agreement of
October 23, 1995 between Briercroft Service Corporation and the Resolution Trust
Corporation as Receiver for Beacon Federal Savings Association as sellers and Old
Republic Insured Financial Acceptance Corporation as purchaser is permanently
recorded with the Resolution Trust Corporation as RTC Master Contract Nos. 37624
(Beacon) & 37625 (Briercroft) and stored as Case #DOSSWF-SA-5615.” This
affidavit says nothing whatsoever about the Leavings’ note or trust deed; nor do its
deficiencies stop there.
          Bell fails to state what his role is at the FDIC that would afford him the basis
for personal knowledge of the facts to which he testifies. He fails to state that he has
personal knowledge that the FDIC or RTC acquired the Leavings’ note or, a fortiori,
how either agency acquired it. Indeed, he does not state that he has any personal
knowledge of the Leavings’ note, that he has any personal knowledge of the October
23, 1995 Loan Sale Agreement, other than that it is stored in RTC records,


 or that
he has any personal knowledge that the Loan Sale Agreement conveyed the
Leavings’ note from Briercroft Service Corporation to Old Republic Insured
Financial Acceptance Corporation. Nor does he indicate any knowledge of the
relationship, if any, either the RTC or the FDIC bears to Briercroft Service
Corporation. Moreover, the transfer and assignment agreement executed by Jon G.
Moyer, which Bell testifies is attached to his affidavit, is, in fact, not attached to his
affidavit; it is attached only to Mills’ affidavit; and Bell does not state how he knows
that Moyer had the authority to execute the agreement, rendering this statement
hearsay. Bell’s affidavit is, therefore, not competent summary judgment evidence
of the transfer of the Leavings’ note or trust deed from Briercroft Service
Association to Old Republic.
          Neither the Bell affidavit nor any other summary judgment evidence proves
any transfer of the Leavings’ note and trust deed from Briercroft Service Corporation
to Briercroft Savings Association or from Briercroft Savings Association to the RTC
or FDIC, or, as Mills states in his own sworn summary judgment motion, to “FSLIC
and the OTS.” Thus, Mills has failed to produce competent summary judgment
proof that the Leavings’ note was transferred in an unbroken chain of title from Solar
Marketing to Old Republic. 
          Nor are these the only gaps in the chain of title of the note and trust deed. 
Mills also attests through his sworn summary judgment motion that the affidavit of 
Jo Allyn Comstock for Old Republic “attest[s] to sale and assignment to JAMES C.
MILLS” of the Leavings’ Note. It does not. Comstock testifies only that she is the
keeper of the records of Old Republic, and the only facts of which she claims to have
personal knowledge are that an attached document is a true and correct copy of the
Loan Sale Agreement, that it is a permanent part of the files and records of Old
Republic, and that she is aware that her affidavit will become a permanent part of the
records of James C. Mills and Multimortgage Bancorp. and will be used as an exhibit
in a court of law. Once again, the October 23, 1995 Loan Sale Agreement is not
attached.
          Since the Loan Sale Agreement is not attached to the Comstock affidavit or
otherwise included in the summary judgment record, there is no evidence that it
transferred the Leavings’ note and trust deed from Briercroft Service Corporation to
Old Republic. Even more importantly, in her affidavit Comstock does not attest to
any personal knowledge of the Leavings’ note and trust deed or to any facts showing
her personal knowledge of its transfer to Old Republic or from Old Republic to
Multimortgage Bancorp. or Mills. Comstock’s affidavit is thus no evidence of these
transfers, and Mills’ own affidavit testimony that the Comstock affidavit “attest[s]
to sale and assignment to James C. Mills” of the note and trust deed is incorrect.
          Finally, while the summary judgment record does contain an assignment of the
trust deed by Old Republic to Multimortgage Bancorp., dated December 6, 1996,
there is no evidence that the note was transferred to Multimortgage Bancorp. Nor
is there any evidence that either the note or the trust deed was legally transferred
from anyone to Mills. Mills’ affidavit testimony that he is the legal owner of the
Leavings’ note is conclusory and not substantiated by any summary judgment
evidence of the basis for his claim. A conclusory affidavit is not competent summary
judgment proof that the affiant is the owner or holder of a note. See Tex. R. Civ. P.
166a(f); Tex. Div.-Tranter, Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994);
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Geiselman, 965 S.W.2d
at 537)(affidavit of vice president of assignee of promissory note that assignee was
legal owner of notes allegedly transferred from FDIC and lost was incompetent
summary judgment evidence where there was no testimony in affidavit to account
for loss or destruction of notes); Jernigan, 803 S.W.2d at 772 (appellant’s bare
allegation of ownership of note with gap and inconsistency in chain of title held
insufficient to establish ownership as a matter of law). Mills has thus failed to prove
that he is the owner of the Leavings’ note or, therefore, that he has the right to
enforce it. 
          Since Mills has failed to show that he is either the owner or the holder of the
note or of the trust deed, we hold that Mills has failed to establish his entitlement to
summary judgment.


 We sustain appellant’s first point of error. Given this
disposition, we need not address appellant’s remaining points of error. 
Conclusion 
          We reverse and remand for further proceedings consistent with this opinion.
 
 
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Bland.