**STATE SAVINGS & LOAN ASSOCIATION OF LUBBOCK, et al.,**
**Plaintiffs,**

**State Federal Savings & Loan Association of Lubbock,**
**Plaintiff–Appellee,**

**v.**

**LIBERTY TRUST COMPANY,**
**Defendant–Appellant.**

**No. 88–1106.**

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1989.
As Amended on Denial of Rehearing
Feb. 22, 1989.

Marc L. Skeen, Neal R. Allen, Jad Davis, Midland, Tex., for defendant-appellant.

Rick G. Strange, Max Edwin Wright, Midland, Tex., John A. Christy, Atlanta, Ga., for plaintiff-appellee.

Before GEE, SNEED,[*] and WILLIAMS, Circuit Judges.

SNEED, Circuit Judge:

Liberty Trust Co. ("Liberty Trust") appeals a judgment of a district court holding it liable to State Federal Savings & Loan Association of Lubbock ("State Federal") on a promissory note.

Liberty Trust asserts that the district court erred in permitting State Federal to enforce the note. In the alternative, Liberty Trust asserts that the district court erred in failing to reduce the judgment after State Federal settled with the note's co-makers and that the district court should not have awarded attorney's fees to State Federal. We wholly reject Liberty Trust's initial position. We partially reject Liberty Trust's alternative position. That is, we affirm the district court's refusal to reduce the judgment following State Federal's set-tlement, but reverse and remand the district court's determination of the amount recoverable as attorney's fees.

## I.

### FACTS AND PROCEEDINGS BELOW

In 1983, Billy C. Taylor and William Michael Furman asked State Savings & Loan Association of Lubbock ("State Savings") for a loan to assist them in developing a real estate project in New Mexico. Taylor and Furman, at the time, owned most or all of the stock of Gold King, Inc. Gold King owned Liberty Trust Co. and Carrizo Lodge, Inc., as subsidiaries; Carrizo Lodge owned the New Mexico property that Taylor and Furman wanted to develop. State Savings agreed to lend them $6.25 million in exchange for a promissory note and a lien on the property. State Federal required Gold King, Liberty Trust, and Carrizo Lodge to sign the note as makers and required Taylor and Furman and their spouses to guarantee the note.

Although the project enjoyed some success, the parties eventually failed to make payments on the note. In 1986, State Federal, asserting that it had acquired the note from State Savings, sued Liberty Trust, Gold King, and the Taylors and the Furmans in a Texas state court. Gold King, which had gone into bankruptcy, removed State Federal's action to the United States district court below. The district court joined Carrizo Lodge as an additional defendant.

Two significant events occurred before trial. First, Liberty Trust, under the control of a bankruptcy trustee, filed an adversary proceeding against State Federal, State Savings, and several of their officers, directors, and attorneys. Liberty Trust asked for rescission of the note and damages for misrepresentation and other allegedly improper conduct. Second, Gold King, Carrizo Lodge, and the Taylors and the Furmans entered into a so-called "settlement agreement" with State Federal.

* Circuit Judge of the Ninth Circuit, sitting by designation.

In this agreement, the debtors conceded liability to State Federal in the full amount of the note and promised not to oppose foreclosure on the New Mexico property. They also agreed to give State Federal claims against their bankruptcy estates for any liability unsatisfied after foreclosure. Although State Federal agreed to follow orderly appraisal and other procedures in satisfying the debt, it did not agree to accept less than a complete satisfaction. The district court approved the settlement on November 2, 1988. Excerpts of Record (E.R.) at 2:273.

In this action against Liberty Trust, State Federal sought to show in the trial that it had acquired ownership of the note from State Savings through a transfer of assets supervised by the Federal Savings and Loan Insurance Corporation (FSLIC). Although the copy of the note that State Federal introduced into evidence contained no indorsements, State Federal's vice president, Mrs. Ellen Hein, testified that State Federal was the "successor in interest to the assignee of the assets of State Savings," which assets included the promissory note. VII R. 2. Mrs. Hein then stated that the note had outstanding $6,299,673.90 in principal and $2,200,894.64 in interest. VII R. 6.

The note required the co-makers "to pay all costs of collection, including but not limited to reasonable attorney's fees." E.R. at 5:2. The note, in addition, stipulated that "reasonable attorney's fees will be not less than 10% of unpaid principal and accrued interest." E.R. at 5:2. Mrs. Hein testified that State Federal incurred necessary "loan expenses" of $272,117.29 and "operating expenses" of $249,815.58; she explained that the loan expenses consisted of attorney's fees and other fees, and that the operating expenses consisted of expenses incurred in running the real estate project. VII R. 16. Mrs. Hein did not address the reasonableness of the fees.

The district court entered a judgment for $9,022,501.54 in favor of State Federal, which (with a minor arithmetic error) represents the sum of the principal, interest, and expenses. E.R. at 2:272. Liberty Trust then moved, first, to amend the *pleadings* to assert release as a partial defense, I R. 81, 83, and, second, to amend the *judgment* to reflect the release, E.R. at 4:8. The district court denied the latter motion but never ruled on the former. E.R. at 3. The notice of appeal that Liberty Trust subsequently filed states that it is appealing the district court's denial of the motion to amend the judgment but not its failure to grant the motion to amend the pleadings. I R. 2–3.

## II.

## JURISDICTION

The district court had removal jurisdiction under 28 U.S.C. § 1452(a) (Supp. IV 1986). Although under the provisions of § 157(a) the district court automatically should have referred the case to a bankruptcy court after removal, *see* 9 *Collier on Bankruptcy* ¶ 9027.03, at 9027–13 (L. King ed. 15th ed. 1988), the error was harmless. The district court, under 28 U.S. C. § 157(d) (Supp. IV 1986), could have withdrawn the case from the bankruptcy court upon its own motion for cause. This court has jurisdiction over an appeal from the final decision of a district court under § 1291 (1982).

## III.

## STANDARD OF REVIEW

This court accepts a district court's findings of fact unless they are clearly erroneous, *see* Fed.R.Civ.P. 52(a), but reviews issues of law de novo. *See Texas Extrusion Corp. v. Lockheed Corp., (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1156–57 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988).

## IV.

## STATE FEDERAL'S POWER TO ENFORCE THE NOTE

■ Liberty Trust argues that the district court erred in allowing State Federal to enforce the note because State Federal was not a holder of the note at the time of

trial. Texas law defines a holder as "a person who is in possession of ... an instrument ... issued, or indorsed to him or his order or to bearer or in blank." Tex.Bus. & Com.Code Ann. § 1.201(20) (Vernon Supp.1988). State Federal does not fall within this definition. As both parties agree, the co-makers issued the note to State Savings and State Savings never indorsed it. State Federal, therefore, cannot exercise a holder's rights to sue on the note. *See id.* § 3.301 (Vernon 1968) (granting a holder of a note the right to "enforce payment in his own name").

■ State Federal, nevertheless, may enforce the note against Liberty Trust. In Texas the owner of a note may enforce it even if he is not a holder.[1] *See Waters v. Waters,* 498 S.W.2d 236, 241 (Tex.Civ.App. —Tyler 1973, writ ref'd n.r.e.). Case law also makes clear that State Federal's ownership of the note was established by introduction of the copy of the note into evidence, without an objection by Liberty Trust, and the uncontested testimony of Mrs. Hein. *See Zarges v. Bevan,* 652 S.W.2d 368, 369 (Tex. 1983) (per curiam) (holding that plaintiff could prove ownership for purposes of summary judgment by attaching a photocopy of note and sworn affidavit asserting ownership); *Clark v. Dedina,* 658 S.W.2d 293, 295–96 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd) (same). Although *Perkins v. Crittenden,* 462 S.W.2d 565, 566–67 (Tex.1970); *Southwestern Fire & Casualty Co. v. Larue,* 367 S.W.2d 162, 166 (Tex. 1963); and *First State Bank v. Smith,* 488 S.W.2d 837, 838 (Tex.Civ.App.—Fort Worth 1972, no writ), indicate that neither mere testimony nor a mere copy of a note can prove ownership, in this case, there were both and a bit more. Therefore, we do not regard these cases as controlling.

## V.

## THE CONSEQUENCES OF THE SETTLEMENT

Liberty Trust next argues that, even if State Federal may enforce the note, State Federal partially discharged Liberty Trust by releasing Carrizo Lodge and Gold King in the settlement agreement. State Federal responds that Liberty Trust failed to plead the issue of release as an affirmative defense but that, in any event, a reduction of the judgment in this case is not required under Texas law. We shall address each of these contentions.

### A. *Failure to Plead the Release*

■ Liberty Trust could not have raised release as an affirmative defense when it initially filed its answer because it did not learn of the settlement until immediately before trial. Liberty Trust, however, did raise the issue orally at trial and did file a motion to amend the pleadings. I R. 81, 83; VI R. 6. The district court, as noted earlier, never ruled on that motion, but rejected another motion by Liberty Trust to amend the judgment to reflect the release. E.R. at 3. Although Liberty Trust's notice of appeal states only that it is appealing the denial of the motion to amend the judgment, the motion to amend the judgment relates so closely to the motion to amend the pleadings that Liberty Trust's appeal should be considered to cover both. *See Ingraham v. United States,* 808 F.2d 1075, 1080 (5th Cir.1987) (notices of appeal should be liberally construed). Liberty

---

1. The Uniform Commercial Code as enacted in Texas does not address many issues relating to notes that have been assigned but not indorsed. *See generally id.* § 1.103. Courts therefore must look to case law to determine both the requirements of ownership, *see* 5 R. Anderson, *Anderson on the Uniform Commercial Code* § 3–301:8, at 481 (3d ed. 1984) ("If [a plaintiff] claims by voluntary assignment or by operation of law, he must show such transfer to him by virtue of non-Code law, which prior law continues not displaced."), and the rights that owners have to enforce their notes, *see id.* § 3–301:10

("As a continuation of the pre-Code law not displaced by the Code, a claimant may sue as an assignee of commercial paper although he does not have the status of a holder.").

Despite a lengthy argument by State Federal, Fed.R.Evid. 1003 has no relevance to the present dispute because the parties do not contest the note's content. *See* Fed.R.Evid. 1003 advisory committee's note (permitting introduction of a copy of an instrument "[w]hen the only concern is with getting the words or other contents before the court with accuracy and precision").

Trust, therefore, properly has presented the issue of release to this court.

### B. *Reducing the Judgment*

■ Liberty Trust argues that under Tex.Bus. & Com.Code Ann. § 3.606(a) (Vernon 1968), State Federal's settlement with Gold King and Carrizo Lodge partially discharged it. Section 3.606(a) provides in part:

> The holder discharges any party to the instrument to the extent that without such party's consent the holder
> (1) without express reservation of rights releases or agrees not sue any person against whom the party has to the knowledge of the holder a right of recourse....

*Id.* This section serves to prevent a note's holder from entering a settlement with one of the note's makers (or other parties) that places the brunt of the liability on another maker (or other party). *See generally* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 13–14, at 522 (2d ed. 1980).

After examining the settlement carefully, we conclude that State Federal did not release anyone.[2] No one was discharged thereby. The settlement agreement, as approved by the district court, provides State Federal with a judgment. State Federal did not agree to accept less than the full amount of note from any of the settling parties. Under the settlement, State Federal merely agreed to follow certain foreclosure, appraisal, and related procedures. It was contemplated, of course, that at the conclusion of these procedures certain parties would be discharged. Whether this would be upon total or partial payment of the note remains to be seen.

Gold King, Liberty Trust, and Carrizo Lodge, to repeat, made themselves jointly and severally liable on the note when they signed it as co-makers. *See* Tex.Bus. & Com.Code Ann. § 3.118(5) (Vernon 1968). None have been discharged. Accordingly,

although State Federal cannot obtain more than one satisfaction of the note, it can obtain judgments on the note against all three makers. The district court, therefore, properly held Liberty Trust liable in the full amount of the note.

### VI.

### EXPENSES

■ State Federal and Liberty Trust agree that the district court should not have allowed State Federal's "operating expenses," in the amount of $249,815.58. We further believe that the district court on this record should not have allowed the $272,117.29 in "loan expenses." State Federal presented no evidence of the reasonableness of either of these fees.

It is possible that the "loan expenses" constitute attorney's fees in whole or in part. The promissory note, as noted above, stipulates that "reasonable attorney's fees will not be less than 10% of unpaid principal and accrued interest." E.R. at 5:2. If the loan expenses consisted only of attorney's fees, they would be recoverable in full because $272,117.29 is less than ten percent of the unpaid principal and accrued interest. However, because the record does not reveal the nature of these loan expenses, we cannot determine their reasonableness under the stipulation. We, therefore, in the interest of justice, remand to the district court for the proper determination of attorney's fees while reminding that court that only reasonable fees are recoverable.

The judgment of the district court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART with the judgment reduced as indicated.

---

2. We note that, by its own terms, § 3.606 applies only to releases made by holders and, therefore, the section technically cannot apply to State Federal, which is merely an owner of

the note. We do not rest on this ground alone, however, because we believe that Texas courts would apply a similar rule to owners of notes if the issue ever came before them.