James W. CHRISTIAN, Appellant,

v.

UNIVERSITY FEDERAL SAVINGS ASSOCIATION, Appellee.

No. 01–89–01135–CV.

Court of Appeals of Texas, Houston (1st Dist.),

June 7, 1990.

Steven E. Halpin, Houston, for appellant.

Michael J. Smith, Houston, for appellee.

Before SAM BASS, MIRABAL and COHEN, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a summary judgment rendered in favor of appellee, University Federal Savings Association ("Federal"), against appellant, James W. Christian, in a suit on a note.

University Savings Association, Federal's predecessor, sued Christian for $50,000.00, plus interest, due on a promissory note. Christian filed a general denial, and alleged that University Savings converted 5,000 shares of common stock given as collateral, thereby breaching its duty of good faith and fair dealing, and also alleged the affirmative defense of accord and satisfaction.

In point of error one, Christian contends the proof did not conclusively establish each element of Federal's claim. Christian contends that Federal did not prove it was the owner and holder of the note.

The movant for summary judgment must show that there was no genuine issue of

material fact and that it was entitled to judgment as a matter of law. Evidence favorable to the non-movant will be taken as true, and every reasonable inference will be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Federal's motion was supported by the affidavit of its vice-president, Robert Shaw. He stated that Christian defaulted on the note; the unpaid principal balance was $50,000.00; the note was accelerated; Christian was notified; demand for payment was made; and Christian still refused to pay. Shaw swore that Federal was the "owner and holder of the Note by virtue of a transfer and assignment from the Federal Savings and Loan Insurance Corporation as Receiver of University Savings Association."

Christian objected that sworn copies of papers referred to in Shaw's affidavit were not attached to the affidavit. He argues that Federal had to show documentary proof of the assignment in order to prove ownership.

■ Even though the note was not endorsed by University Savings Association, Shaw's affidavit that Federal owned the note was sufficient. *Waters v. Waters*, 498 S.W.2d 236, 241 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.). Documentation is not required to prove these transfers; testimony is sufficient. *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex.1983); *Lawson v. Finance Am. Private Brands*, 537 S.W.2d 483, 485 (Tex.App.—El Paso 1976, no writ); *see State Sav. & Loan Ass'n v. Liberty Trust Co.*, 863 F.2d 423, 425–26 (5th Cir. 1989). Therefore, the evidence sufficiently proved each element of Federal's claim. *See Life Ins. Co. of Virginia v. Gar–Dal, Inc.*, 570 S.W.2d 378, 381 (Tex.1978).

Point of error one is overruled.

In point of error two, Christian contends there was a material fact issue regarding the alleged accord and satisfaction.

■ A party asserting an affirmative defense must raise a fact issue on each element of the defense. *Seale v. Nichols,*

505 S.W.2d 251, 254 (Tex.1974). Accord and satisfaction rests upon a new contract, express or implied, in which the parties agree to discharge the existing obligation by a lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1970). The evidence must show an agreement that the debtor's payment fully satisfied the entire claim. *Id.* There must be an unmistakable communication to the creditor that acceptance of the lesser sum will satisfy the underlying obligation. *Id.* Such condition must be plain, definite, certain, clear, full, explicit, not susceptible of any other interpretation, and accompanied by acts and declarations that the creditor is "bound to understand." *Id.*

■ Christian's affidavit stated that, as collateral, he pledged 5,000 common shares of stock to University. He further stated:

On March 17, 1989, I had a telephone conversation with Robert L. Shaw. He said that University was agreeable to reducing the interest rate on the promissory note to four percent (4%) per annum and would renew the loan with interest only payable for a couple of years. He also said that accrued interest to date would be capitalized. At that time University would not accept a lump sum cash settlement with a discount because it did not want to take the loss on the books. He also said that University would not accept the shares in satisfaction of the indebtedness. I told him that his offer was acceptable and to prepare the necessary documentation which I awaited receipt of.

On March 29, 1989, suit was filed by University even though Mr. Shaw had stated that the loan would be modified and renewed. I was served with process on April 5, 1989.

On April 6, 1989, I had a lengthy telephone conversation with Mr. Shaw because I was quite upset in getting sued when I thought we had worked out a modification. He said that things were changing fast at University due to the federal regulators. He said that he also thought we had a deal but that University would no longer accept the modifica-

tion that he and I had agreed to. He suggested that I send a list outlining my financial difficulties and said that "we'll work-out this loan" and that I didn't need to file an answer in the lawsuit filed by University. I told him that I had relied upon our agreement to modify the loan, and he replied apologetically that we would need to do something else. I offered two proposals, namely:

(a) Allow me to keep 1,000 shares of stock and give University Savings Association back 4,000 shares of stock and service with principal reductions quarterly a $10,000.00 obligation which I felt reasonably certain that I could service; or

(b) Give back all the stock to University Savings Association and execute a small deficiency not to exceed approximately $2,500.00 payable over some period of time that I could service.

He stated that University would take back the shares and credit the value on my balance. I confirmed our telephone conversation in writing by my letter dated April 7, 1989.

On April 12, 1989, I had a telephone conversation with Robert L. Shaw who reassured me that he was "going to work it out", however, I have had no other communications since that day.

Christian attached a letter to Shaw, dated April 7, 1989, offering to enter the agreement set out in the affidavit. The letter begins:

> Pursuant to our conversation of yesterday, please allow this letter, in the offer of compromise and settlement, to attempt to resolve the present defaults which presently exist on that one certain note in the original principal sum of $50,-000.00, which I, James W. Christian, executed to University Savings Association to allow me to purchase 5,000 shares of City National Bank stock.

The statements in Christian's affidavit and letter do not raise a fact issue on accord and satisfaction. *See Pickering v. First Greenville Nat'l Bank*, 495 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.) The statement that Shaw would reduce the interest rate and "take back the shares and credit the value on my balance" does not show an agreement to accept the shares in full satisfaction of the entire underlying obligation. The statements were negotiations. The letter shows there was no such agreement; it was merely an offer to Federal.

 Christian contends there was a fact issue regarding Federal's duty to foreclose on the collateral before suing, in order to mitigate its damages. Federal had no such duty. The creditor may sue without resorting to the security. *See Carter v. Gray*, 125 Tex. 219, 221, 81 S.W.2d 647, 648 (1935); *Lazidis v. Goidl*, 564 S.W.2d 453, 456 (Tex.Civ.App.—Dallas 1978, no writ). Moreover, Christian's affidavit said nothing about the collateral, except that Federal possessed it. Therefore, no fact issue was raised regarding a duty to foreclose on the collateral.

Point of error two is overruled.

The judgment is affirmed.