Opinion issued April 9, 2009 







In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-01000-CV

____________


MILTON M. COOKE CO. AND MILTON M. COOKE, JR., Appellants


V.


FIRST BANK AND TRUST, Appellee






On Appeal from the 164th District Court 

Harris County, Texas

Trial Court Cause No. 2005-24605 






O P I N I O N


 Appellants, Milton M. Cooke Co. (Company) and Milton M. Cooke, Jr.
(Cooke) (jointly, appellants), challenge a final judgment rendered in favor of
appellee, First Bank and Trust (First Bank), on its suit to collect on two promissory
notes. (1) Appellants responded to First Bank's lawsuit by asserting accord and
satisfaction as an affirmative defense and counterclaims that included negligence,
conversion, unjust enrichment, usury, and breach of contract. Trial was to the court
on stipulated facts. The trial court's judgment awarded First Bank the outstanding
balances due on two promissory notes, interest on the balances, and attorney's fees.
In rendering judgment in favor of First Bank, the trial court impliedly rejected
appellants' claim of accord and satisfaction and denied their counterclaims. 
Appellants present two sets of issues. In their first issue and its sub-issues, appellants
ask that we render a take-nothing judgment in their favor because they established
their accord and satisfaction affirmative defense as a matter of law; their second and
third issues alternatively challenge denial of their counterclaims. We affirm.

Background


 This lawsuit derives from two competing claims. First Bank's dispute derives
from appellants' failure to pay obligations due to First Bank on two promissory notes. 
One note, in the principal amount of $150,000, secured an equipment loan; the second
note, in the principal amount of $237,000, secured a boat loan constructed as a ship's
mortgage. (2) Appellants' dispute derives from First Bank's having honored checks that
Company bookkeeper, Marsha Riley, issued to herself from Company's operating
account and from Cooke's personal account with First Bank. (3) Riley had been
withdrawing funds to support a gambling habit for about 18 months when Company
discovered the unauthorized checks. Estimates of the funds lost from her conduct
ranged from $235,000 to $336,000. Riley was still working for Company, although
with restricted responsibilities when this case went to trial. 

 First Bank refused to reimburse Company for the unauthorized checks,
claiming that Company's late notice violated terms of its deposit agreement with First
Bank. Among other terms, the agreement required that Company or Cook provide
notice of unauthorized checks within 60 days of their being issued. (4) 

 After a series of written communications ensued concerning whether First
Bank would reimburse appellants for Riley's unauthorized checks, Cooke devised a
plan to offset the losses related to the unauthorized checks through Company's
indebtedness to First Bank under the notes that secured the equipment and boat loans.
Cooke warned First Bank then, both verbally, in speaking with a bank officer named
Montenegro, and in writing, that he was considering "withholding all payments on
all notes currently held by First Bank as offsets to the money owed to [Company]" for
Riley's unauthorized checks unless First Bank deposited $235,000 in the Company
account. (5) An attorney for First Bank explained to Cooke in writing the legal reasons
why it would not accept the offset, and First Bank continued to refuse Company's
requests to deposit the $235,000 in appellants' accounts. 

 In keeping with his warnings and objections to First Bank's failure to
reimburse for Riley's unauthorized withdrawals, Cooke then issued two checks to
First Bank. Each check was in the customary amount of the monthly payments on
Company's notes for its equipment and boat loans. The amounts of the checks were
$3,471.38, against an unpaid balance of $122,218.53 for the equipment loan, and
$2,888.91, against an unpaid balance of $193,156.51 for the boat loan. Cooke
submitted each of the checks to a First Bank teller, in keeping with his usual practice. 
In contrast to his usual practice, however, Cooke added "payment in full" notations
to those checks. Cooke testified that he added the notation to indicate that the
respective, monthly payment amounts would fully satisfy all further Company
obligations under the notes. An additional purpose was to "offset" Company's losses
from the unauthorized checks written by Riley, for which appellants held First Bank
liable. Cooke instructed the teller to whom he gave the "full payment" checks to give
the checks directly to Montenegro, the bank officer whom Cooke had warned that he
would proffer this "offset." 

 At trial, Cooke described appellants' strategy as "trying to have the bank enter
into an accord and satisfaction" to compensate Company for losses arising from the
unauthorized checks by Riley. After Cooke's proffer, Company took the position that
it had no further obligation to First Bank on the notes and did not make any additional
installment payments on the notes. This prompted First Bank to declare both notes
in default and to accelerate them, in accordance with their terms, and to file this
lawsuit. 

 In seeking declaratory relief on their affirmative defense of accord and
satisfaction, appellants argued that their "payment in full" checks tendered to First
Bank completely satisfied their obligations to First Bank under the equipment and
boat loan notes. Neither side prevailed on traditional and no-evidence motions for
summary judgment, and the parties proceeded to trial based on stipulated facts
derived from their respective proposed findings of fact. The trial court's judgment
awarded First Bank damages in accordance with Company's and Cooke's outstanding
obligations under the notes, accrued interest, and attorney's fees, and denied
appellants relief on their counterclaims. 

Standard of Review--Legal Sufficiency


 This case is before us on appeal from a bench trial after which the trial court
filed extensive findings of fact and conclusions of law at appellants' request. The
record includes the full reporter's record of the trial. Appellants' arguments in their
principal brief do not clarify whether they challenge any of the trial court's findings
of fact or whether they have asserted legal or factual sufficiency challenges. Their
arguments and the relief requested by those arguments, however, consistently seek
rendition in their favor, on the grounds that they proved their case as a matter of law. 
We thus construe their arguments as asserting legal-sufficiency or "no evidence"
challenges. See Vista Chevrolet, Inc. v. Lewis, 709 S.W.2d 176 (Tex. 1986) (stating
well-settled rule that "no evidence" points require rendition in favor of appealing
party). (6) 
 In an appeal from a judgment after a bench trial, we accord the trial court's
findings of fact the same weight as a jury's verdict. See Brown v. Brown, 236 S.W.3d
343, 347 (Tex. App.--Houston [1st Dist.] 2007, no pet.). When, as here, the record
includes a complete reporter's record, the trial court's findings of fact are subject to
sufficiency challenges under the same standards we apply to address the sufficiency
of the evidence to support a jury's answer. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex.
1996); Brown, 236 S.W.3d at 348.

 Thus, to determine whether legally sufficient evidence supports a challenged
finding, we must consider evidence that favors the finding if a reasonable fact-finder
could consider it, and we must disregard evidence contrary to the challenged finding
unless a reasonable fact-finder could not disregard it. See City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005). This Court may not sustain a legal insufficiency,
or "no evidence" point unless the record demonstrates (1) a complete absence of
evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from
giving weight to the only evidence offered to prove a vital fact; (3) that the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence
conclusively establishes the opposite of the vital fact. Id., 168 S.W.3d at 810. 

 We review conclusions of law by the trial court de novo and will uphold them
if the judgment can be sustained on any legal theory supported by the evidence. 
Brown, 236 S.W.3d at 348. The trial court's conclusions of law are not subject to
challenge for lack of factual sufficiency, but we may review the legal conclusions
drawn from the facts to determine their correctness. Id. 

 Appellate review in Texas proceeds by analysis of issues presented or points
of error. See Tex. R. App. P. 38.1(f). Except in cases of fundamental error, neither
claimed or at issue here, we may not reverse a lower court's judgment without an
assignment of error, whether by issues or points. See Walling v. Metcalfe, 863
S.W.2d 56, 58 (Tex. 1993); see generally 6 Roy W. McDonald & Elaine Grafton
Carlson, Texas Civil Practice § 38:3, 1025 (2d ed.1998). We are thus prohibited from
altering even an erroneous judgment in a civil case without a challenge to the error
on appeal. See Walling, 863 S.W.2d at 58; Britton, 95 S.W.3d at 680.

 As applied to this appeal from a bench trial in which the trial court has filed
findings of facts and conclusions of law, the requirement to challenge error on appeal
compels that an unchallenged finding of fact is binding on an appellate court unless
(1) the contrary finding is established as a matter of law, or (2) no evidence supports
the finding. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986) (stating
rule); see also Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d 423,
426-27 (Tex. 2004) ("We must, of course, accept this finding if there is any evidence
to support it," but concluding, on applying rule, that evidence relied on did not
support trial-court finding). Under the same rationale, we will overrule a challenge
to fact findings that form the basis of a conclusion of law or disposition when the
appellant does not challenge other fact findings that support that conclusion or
disposition. See Britton, 95 S.W.3d at 682 (citing In the Matter of L.R., 67 S.W.3d
332, 339 (Tex. App.--El Paso 2001, no pet.)). 

 Accord and Satisfaction


 In their first issue and its six sub-issues, appellants contend they established
their affirmative defense of accord and satisfaction as a matter of law, and they
challenge the trial court's contrary conclusion. Appellants focus on the UCC, but the
defense invokes other principles as well. Appellants further contend that this appeal
compels that we decide whether an offsetting obligation, here the Bank's alleged
obligation to refund the funds represented by Riley's unauthorized checks, can form
the basis of an accord and satisfaction. We need not reach that issue, however,
because appellants did not establish that an accord and satisfaction resulted from their
"full satisfaction" tender.

A. Common Law, UCC § 3.311, and Contract

 Appellants rely on the defense of accord and satisfaction as codified by the
Legislature in adopting Article 3 of the Uniform Commercial Code (UCC). See Tex.
Bus. & Com. Code Ann. § 3.311 (Vernon 2002). In sub-issue six, appellants argue
that the trial court disregarded section 3.311 and erred by relying instead on common-law principles in rejecting appellants' contentions. Appellants maintain that UCC
section 3.311 compels a ruling in their favor. First Bank disagrees and counters that
provisions of its agreements with appellants are dispositive of their claims. 
Accordingly, we first address the legal principles that control this controversy before
analyzing appellants' issues. 

 1. Common Law 

 Common-law principles define the defense of accord and satisfaction as
premised on a contract, express or implied, in which the parties agree to discharge an
existing obligation by means of a lesser payment that is tendered and accepted. Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 863 (Tex. 2000) (citing Jenkins
v. Henry C. Beck Co., 449 S.W.2d 454, 455 (Tex. 1969)); see Indus. Life Ins. v.
Finley, 382 S.W.2d 100, 104 (Tex. 1964) (describing agreement contemplated as "a
new contract"). 

 To prevail under the common law on their affirmative defense that an accord
and satisfaction barred First Bank's claims for the accelerated balances due on
appellants' loans, appellants had to produce (1) evidence establishing a dispute
between them and First Bank and (2) evidence establishing that they and First Bank
specifically and intentionally agreed to discharge appellants' obligations. See 
Munoz, Hockema & Reed, L.L.P., 22 S.W.3d at 863. Well-settled law recognizes that
the parties' dispute provides the consideration for the ensuing agreement. Indus. Life
Ins., 382 S.W.2d at 104; see Hycarbex, Inc. v. Anglo-Suisse, Inc., 927 S.W.2d 103,
110 (Tex. App.--Houston [14th Dist.] 1996, no writ) ("[T]he very existence of the
dispute is the consideration for the accord and satisfaction.") (citing Dickson v.
Stockman, 411 S.W.2d 610, 613 (Tex. Civ. App.--Texarkana 1966, writ ref'd n.r.e.)).

 2. Uniform Commercial Code

 Section 3.311 of Article 3 of the UCC contains a detailed provision regarding
accord and satisfaction. Pursuant to section 3.311(a)-(b), a claim "is discharged" if
the "person against whom the claim is asserted proves that the instrument or an
accompanying written communication contained a conspicuous statement to the effect
that the instrument was tendered in full satisfaction of the claim" and

 (1) that person in good faith tendered an instrument to the claimant as
full satisfaction of the claim;


 (2) the amount of the claim was unliquidated or subject to a bona fide
dispute; and


 (3) the claimant obtained payment of the instrument.


Tex. Bus. & Com. Code Ann. § 3.311(a)-(b) (Vernon 2002). (7) 

 But section 3.311 does not conflict with the common-law doctrine of accord
and satisfaction, as appellants contend in sub-issue six; rather, the statute is consistent
with the doctrine as interpreted by Texas courts. Case Funding Network, L.P. v.
Anglo-Dutch Petroleum Intern., Inc. 264 S.W.3d 38, 50 (Tex. App.--Houston [1st
Dist.] 2007, pet. denied); World Help v. Leisure Lifestyles, Inc. 977 S.W.2d 662,
679-80 (Tex. App.--Fort Worth, 1998, pet. denied); see Tex. Bus. & Com. Code
Ann. § 3.311, cmt. 3 ("Section 3-311 is based on a belief that the common law rule
produces a fair result and that informal dispute resolution by full satisfaction checks
should be encouraged."). 

 3. Variance by Agreement 

 Like the common law, however, the UCC recognizes freedom of contract and
specifies that parties may vary "the effect" of UCC provisions by agreement, except
as proscribed by the Code. See Tex. Bus. & Com. Code Ann. § 1.302(a) (Vernon
Supp. 2008); (8) see World Help, 977 S.W.2d at 679 (citing former Tex. Bus. & Com.
Code Ann. § 1.102 cmt. 2 ("But an agreement can change the legal consequences
[that] would otherwise flow from the provisions of the Act.")); see also Jon-T
Chems., Inc. v. Freeport Chem. Co., 704 F.2d 1412, 1416 (5th Cir. 1983) (holding
that UCC provisions do not control over contractual provisions); see also Lenape Res.
Corp. v. Tenn. Gas Pipeline, 925 S.W.2d 565, 570 (Tex. 1996) (same; referring to
UCC Article 2 provisions as "gap-filler [that] may be varied by the parties'
agreement"). 

 Regarding accord and satisfaction, therefore, the common law and the UCC do
not conflict, but, rather, converge, and parties may vary both by agreement.

B. Accord and Satisfaction, as Claimed by Appellants, Barred by Agreement 

 Under the parties' stipulated facts filed in the trial court, neither Cooke nor
Company denied under oath the terms of the equipment and boat notes under oath. 
See Tex. R. Civ. P. 93(7) ("In the absence of such a sworn plea, the instrument shall
be received in evidence as fully proved."). By Conclusion of Law No. 18, the trial
court ruled that Company "agreed under the terms of [the notes] not to deliver the
Full Satisfaction Checks to First Bank except in a specified manner, which they did
not follow." Finding of Fact No. 31 recites that each of the notes contained the
following provisions:

 Borrower agrees not to send Lender payments marked paid in full,
without recourse, or similar language. If Borrower sends such a
payment, Lender may accept it without losing any of Lender's rights
under this Note, and Borrower will remain obligated to pay any further
amounts owed to Lender. All written communications concerning
disputed amounts, including any check or other payment instrument that
indicates that the payment constitutes payment in full of the amount
owed or that is tendered with other conditions or limitations or as full
satisfaction of a disputed amount must be mailed or delivered to: First
Bank, Attn. Payment Processing, P.O. Box 790269 St. Louise, MO
63179-0269. 


(Emphasis in original.) Appellants do not challenge either the conclusion or its
supporting findings. Cooke acknowledged these terms at trial and conceded that he
did not mail or deliver the "full satisfaction" checks in the method described and
instead gave them to a teller. (9) 

 Appellants focus instead on First Bank's challenge to appellants' claim that
they were discharged of any further obligation on the notes by accord and
satisfaction. Because of First Bank's challenge, appellants argue in their first sub-issue that UCC section 3.311(c) imposed a burden on First Bank to establish an
exception to appellants' affirmative defense. Specifically, appellants rely on section
3.311(c)(1), which states that "a claim is not discharged" by the accord and
satisfaction recognized by section 3.311(b) if 

 (1) The claimant, if an organization, proves that:


 (A) within a reasonable time before the tender, the claimant sent
a conspicuous statement to the person against whom the claim is
asserted that communications concerning disputed debts, including an
instrument tendered as full satisfaction of a debt, are to be sent to a
designated person, office, or place; and 


 (B) the instrument or accompanying communication was not
received by that designated person, office, or place.


Tex. Bus. & Com. Code Ann. § 3.311(c)(1)(A)-(B). 

 Appellants contend they (1) have no further obligations under their notes,
which, appellants contend, (2) have been fully "discharged" under section
3.311(a)-(b), because (3) First Bank accepted appellants' "full satisfaction"
payments. Appellants further contend that (4) First Bank cannot rely on terms in the
notes that designate a specific address for "payment in full" checks because the terms
are not "conspicuous," as section 3.311(c)(1)(A) requires. 

 1. Section 3.311(c) Does Not Apply

 Section 3.311(c) does not apply to this case. The accord and satisfaction
provisions of the statute, sections 3.311(b)-(d), will apply in favor of "a person
against whom a claim is asserted." See Tex. Bus. & Com. Code Ann. § 3.311(a)
(emphasis added). (10) The statute thus contemplates that an accord and satisfaction
established under the remainder of section 3.311(a) and section 3.311(b) discharges
an existing claim against a party, who later invokes accord and satisfaction as an
affirmative defense to that claim. See Tex. Bus. & Com. Code Ann. § 3.311(a)-(b). 

 First Bank had no existing claim against appellants when they proffered the
"full satisfaction" checks on their continuing obligations under their equipment and
boat loans. There was no claim under those contractual obligations because it is
undisputed that appellants' note payments were current. As appellants concede in
their reply brief, their dispute did not arise from those loans. The only claim was not
by First Bank, but by appellants against First Bank, and this dispute concerned the
unauthorized checks by Riley. By definition, that claim is not a claim asserted against
appellants, but a claim asserted by them. 

 Similarly, section 3.311(c) applies to a "statement" that has been "sent" by the
claimant, in this case, First Bank, in advance of the tender by the party who claims
an accord and satisfaction, in this case, appellants, through Cooke. See Tex. Bus. &
Com. Code Ann. § 3.311(c). As applied to the context of a bank claimant and its
customer, Section 3.311(c) thus contemplates a dispute over a debt of a customer that
results in a notice, sent by the bank to the customer. See id. The notice instructs that
any "full-satisfaction" payments regarding the existing dispute are to be sent to a
specifically "designated person, office, or place." See id. In the absence of an
existing dispute, there was no reason for First Bank to send a notice. 

 First Bank had no existing claim against appellants and thus had no "dispute"
with appellants that would have triggered the "conspicuous" notice contemplated by
section 3.311(c). A "dispute" under section 3.311(c) must be as to the "claim." 
Vaughn Excavating and Constr., Inc. v. Centergas Fuels, Inc., 223 S.W.3d 591, 592
(Tex. App.--Amarillo 2007, no pet.); Klemp Corp. v. Thompson, 402 S.W.2d 257,
261 (Tex. Civ. App.--Waco 1966, no writ). Monthly payments due under both the
equipment and boat notes were liquidated, certain, and, in this case, undisputed. 

 Though appellants had a dispute with First Bank, First Bank had no dispute
with appellant on which a section 3.311(c) "claim" could be based--until appellants
attempted their "full satisfaction" tender of their debt obligations under the equipment
and boat loans to resolve appellants' dispute with First Bank regarding the Riley
forgery. The terms of section 3.311(c)(1)(A) preclude its application to that dispute,
because the statute further contemplates a dispute that predates the debtor's tender. 
See Tex. Bus. & Com. Code Ann. § 3.311(c)(1)(A) ("within a reasonable time before
the tender") (emphasis added). First Bank had no dispute with appellants until after
their tender, which rendered moot any compliance with section 3.311(c)(1). See id.;
see also Tex. Bus. & Com. Code Ann. § 3.311 cmt. 4 (stating that section 3.311 does
not apply to a liquidated amount not subject to a bona fide dispute); Vaughn
Excavating & Constr., Inc., 223 S.W.3d at 592 (citing Tex. Bus. & Com. Code Ann.
§ 3.311 cmt. 4 ).

 2. Terms of Notes Control

 Most importantly, the record conclusively establishes a prior agreement
between appellants, as authorized by the UCC and addressed above. See Tex. Bus.
& Com. Code Ann. § 1.302(a) (authorizing variance of effect of UCC by agreement). 
This agreement negated any need for First Bank to issue section 3.311(c) notices,
even if a "dispute" contemplated by that section applied. Through Cooke, as
signatory and guarantor of both the equipment and the boat loans, appellants had
agreed, from the inception of the self-proved notes that secured both loans, that any
prepayment of outstanding loan balances by "payment in full" had to be sent to a
specified office, as follows: 

 All written communications concerning disputed amounts, including any
check or other payment instrument that indicates that the payment
constitutes payment in full of the amount owed or that is tendered with
other conditions or limitations or as full satisfaction of a disputed
amount must be mailed or delivered to: First Bank, Attn. Payment
Processing, P.O. Box 790269 St. Louise, MO 63179-0269. 


 Because appellants were contractually bound to these notice provisions, all of
which were specified in the notes securing their equipment and boat loans, First Bank
had no duty to establish an exception under UCC section 3.311(c), through a
"conspicuous" notice to appellants. 

 Therefore, we hold that legally sufficient evidence, in the form of the stipulated
facts on which this case was tried, the self-proving terms of the notes securing
equipment and boat loans, and Cooke's trial testimony, establishes that appellants
breached the agreed terms of those notes by attempting to resolve the dispute
concerning Riley's unauthorized checks by submitting the "full satisfaction" checks
to First Bank in violation of the express prohibitions of the notes. 

 We overrule appellants' first and sixth sub-issues. 

C. Appellants' Tender Not Conditioned on Release by First Bank

 In Conclusion of Law No. 18, the trial court ruled that appellants did not prove
the existence of an accord and satisfaction. In Conclusion of Law No. 24, the trial
court ruled that First Bank did not release appellants. Appellants' second and third
sub-issues encompass contentions that appellants conclusively established that First
Bank had actual knowledge, as required by the UCC, that acceptance of appellants'
"full satisfaction" checks would constitute an accord and satisfaction of appellants'
outstanding obligations for the notes. 

 Before addressing this sub-issue, we re-emphasize yet again that there was no
"dispute" regarding appellants' obligations under the notes and no "claim" by First
Bank regarding those obligations. There was only a claim by appellants regarding
Riley's unauthorized checks and a dispute regarding that claim. But even if
appellants could effect an accord and satisfaction of that dispute by their "full
satisfaction" checks--an issue that we do not decide--there is no evidence, and thus
legally insufficient evidence, that their "full satisfaction" tender was conditioned on
First Bank's release of the remaining balances on appellants' notes securing their
equipment and boat loans. 

 Appellants' reply brief includes a late-asserted challenge to the trial court's
Finding of Fact No. 33, which states, "The Court finds no evidence of an
unmistakable communication to First Bank that the Defendants' tender of the Full
Satisfaction Checks to a teller was conditioned upon the Bank's acceptance in full
satisfaction of the remaining balance of [the notes securing the equipment and boat
loans]." (Emphasis added.) Even if appellants had timely asserted this challenge in
their principal brief, we would be required to reject its premise, specifically, that the
notation "payment in full" on the checks amounted to a tender conditioned on
acceptance by First Bank. The same is true of appellants' late-asserted challenge to
Finding of Fact No. 40, which states,

 The Court finds no evidence of (a) First Bank's acceptance of an offer,
(b) any meeting of the minds between [appellants] and First Bank as to
any terms of a release, (c) each party's consent to the terms, and (d)
execution and delivery of a release contract with the intent that it be
binding. (Emphasis added.) 

 We note at the outset that appellants mistakenly premise their challenges on the
contention that an "honest belief" that First Bank "was liable to some degree for
payment of [Riley's] forged checks" is sufficient to "impute" knowledge to First
Bank that acceptance of the "full satisfaction" checks would result in an accord and
satisfaction of appellants' remaining indebtedness on the notes securing appellants'
equipment and boat loans. 

 Appellants claim support for this premise in H.L. "Brownie" Choate, Inc. v.
Southland Drilling Co., 441 S.W.2d 672, 676 (Tex. Civ. App.--San Antonio), rev'd,
447 S.W.2d 676 (Tex. 1969). But the appellate court's discussion focuses on the
nature of the underlying dispute and addresses the element of good faith in that
context. See id., 441 S.W.2d at 676. We have held that there was no dispute in this
case, until First Bank sought the remaining balance due on appellants' loans, and,
thus, no legitimate dispute, for purposes of accord and satisfaction. See Munoz,
Hockema & Reed, L.L.P., 22 S.W.3d at 863 (noting that accord and satisfaction
requires "legitimate" dispute).

 Most importantly, the supreme court reversed the H.L. "Brownie" Coates
decision and held that no accord and satisfaction had occurred because there was no
evidence that debtor's check was tendered on condition that acceptance would
constitute full satisfaction of disputed amount. See H.L. "Brownie" Choate, Inc., 447
S.W.2d 676, 680 (Tex. 1969). The requirement that tender be conditioned on
acceptance is well-settled under both the common law and the UCC. 

 In Republic Underwriters Ins. Co. v. Mex-Tex, Inc., 150 S.W.3d 423 (Tex.
2004), the supreme court construed the law of accord and satisfaction in the context
of a dispute between an insurance carrier and its insured. Rejecting the insured's
claim, as well as the trial court's express finding, that the insurer's tender was an
attempt "'to enforce a full and final release of [the claim] when only a partial payment
had been made,'" the court held that no evidence demonstrated "any clear intent by
[Republic] to condition its tender on a full release of Mex-Tex's claim." Id. In
reaching this conclusion, the court invoked the well-settled rule that follows:

 The evidence must establish an assent of the parties to an agreement
that the amount paid by the debtor to the creditor was in full satisfaction
of the entire claim. The minds must meet and where resting in
implication the facts proved must irresistibly point to such conclusion.
There must be an unmistakable communication to the creditor that
tender of the lesser sum is upon the condition that acceptance will
constitute satisfaction of the underlying obligation. It has been said that
the conditions must be made plain, definite and certain; that the
statement accompanying the tender of a sum less than the contract price
must be so clear, full and explicit that it is not susceptible of any other
interpretation; that the offer must be accompanied with acts and
declarations which the creditor is "bound to understand."


Republic Underwriters Ins. Co., 150 S.W.3d at 427 (quoting Jenkins, 449 S.W.2d at
455; Indus. Life Ins. Co., 382 S.W.2d at 104 (stating that parties' "minds must meet")
(citing Ortiz Oil Co. v. Geyer, 159 S.W.2d 494, 497 (Tex. 1942) (citing Simms Oil
Co. v. Am. Refining Co., 288 S.W. 163, 164) (Tex. Comm'n. App. 1926)); see Case
Funding Network, L.P., 264 S.W.3d at 50 (citing Jenkins, 449 S.W.2d at 455;
Hycarbex, Inc., 927 S.W.2d at 108); compare H.L. "Brownie" Choate, Inc., 447
S.W.2d at 679 (holding that no evidence showed that debtor's check was tendered on
condition that acceptance would constitute full satisfaction of disputed amount) with
Indus. Life Ins. Co., 382 S.W.2d at 106 (holding that accord and satisfaction
established based on absence of evidence that payment tendered was partial, accepted
tender of check bearing detailed notation indicating receipt as "full and final payment
of all money due as contingent commission" under specifically referenced agreement,
and accompanying, extensively detailed transmittal letter to same effect). 

 Section 3.311(d) of the UCC incorporates the common-law requirement that
both parties understand that tender of the lesser sum is conditioned on acceptance of
that sum as full satisfaction. Section 3.311(d) states,

 A claim is discharged if the person against whom the claim is
asserted proves that within a reasonable time before collection of the
instrument was initiated, the claimant, or an agent of the claimant
having direct responsibility with respect to the disputed obligation,
knew that the instrument was tendered in full satisfaction of the claim.

Tex. Bus. & Com. Code Ann. § 3.311(d) (emphasis added). 

 Comment 7 to UCC section 3.311 clarifies that the knowledge required by First
Bank or an agent of First Bank is "actual knowledge"; mere notice is not sufficient. 
See Tex. Bus. & Com. Code Ann. § 3.311 cmt. 7; accord, Republic Underwriters
Ins. Co., 150 S.W.3d at 427; Christian v. Univ. Fed. Sav. Ass'n, 792 S.W.2d 533, 534
(Tex. App.--Houston [1st Dist.] 1990, no writ) (citing Jenkins, 449 S.W.2d at 455)
(all stating that communication that acceptance of the lesser sum will satisfy
underlying obligation must be "unmistakable"). 

 To know that appellants' checks were "tendered in full satisfaction of a
claim"--had there been a claim, a contention that we rejected above--or as full
satisfaction of the outstanding obligations on their notes, First Bank had to have
"actual knowledge of that fact." See Tex. Bus. & Com. Code Ann. § 3.311 cmt. 7
(quoting Tex. Bus. & Com. Code Ann. § 1.201(25)). As an "organization," First
Bank would have "actual knowledge" that a check was tendered in full satisfaction
of a claim if "that fact" had been "brought to the attention of the individual
conducting that transaction, and in any event it would have been brought to his
attention had the organization exercised due diligence." See id. (quoting Tex. Bus.
& Com. Code Ann. § 1.201(27)). 

 In sub-issues two and four, Appellants contend that First Bank had actual
knowledge for the following reasons:

  Ms. Montenegro was an officer at First Bank and Company's "primary
contact" at the First Bank office where Company did business;


  Montenegro dealt with Company concerning its dispute regarding
Riley's unauthorized checks;


  Cooke "warned" Montenegro that Company would attempt a setoff to
rectify funds Company lost by Riley's unauthorized checks


  Montenegro sometimes worked as a teller and may have supervised the
tellers when Cooke tendered the "full satisfaction" checks;


  Cooke tendered the checks bearing the "full satisfaction" notations to a
teller and instructed the teller to direct the checks to Montenegro's
attention.


  First Bank later struck through the "full satisfaction" notations.

  The stipulated facts show that First Bank accepted the checks, endorsed
them, received the funds, and retained the funds.


 As First Bank emphasized in its reply brief, however, appellants have not
challenged the following findings by the trial court:

 15. Cooke delivered the Full Satisfaction Checks to First Bank tellers in the
same manner in which he normally paid monthly installments under the
Notes.


 16. [Appellants] failed to bring to the First Bank tellers' attention that the
Full Satisfaction Checks were being tendered in full satisfaction of the
obligations of the Notes.


 17. [Appellants] did not deliver the Full Satisfaction Checks to a person at
First Bank with knowledge of the forgery dispute . . . and the apparent
or ostensible authority to accept or reject the accord being offered by the
delivery of the Full Satisfaction Checks.


These findings are binding on this Court unless contrary findings are established as
a matter of law or no evidence supports them. See Republic Underwriters Ins. Co.,
150 S.W.3d at 426; McGalliard, 722 S.W.2d at 696. 

 Though Montenegro was Company's "primary contact" for Company business,
and though appellants "dealt with" her regarding Riley's forgeries, nothing in the
record establishes, to a degree that a rational jury could have reasonably found, see
City of Keller, 168 S.W.3d at 827, that Montenegro had "the apparent or ostensible
authority to accept or reject the accord being offered by the delivery of the Full
Satisfaction Checks." See Tex. Bus. & Com. Code Ann. § 3.311 cmt. 7 (quoting
Tex. Bus. & Com. Code Ann. § 1.201(25)). 

 Regarding the trial court Findings 15 and 16, we note further that the record
shows that an attorney for First Bank responded to Cooke's written "warning" that
appellants would withhold payments on their equipment and boat note obligations
unless $235,000 were refunded for Riley's forgeries. The record also shows that
Cooke had corresponded with another officer of First Bank concerning that
controversy. Though the record does not establish that either of these individuals had
the requisite authority to accept or reject appellants' tender of the "full satisfaction"
checks, it is undisputed that the checks were not sent to either of these individuals. 
Instead, Cooke delivered them to a teller. For purposes of section 3.311(d), 

 "[I]t is irrelevant whether the clerk processing the check did or did not
see the statement that the check was tendered as full satisfaction.
Knowledge of the clerk is not imputed to the organization because the
clerk has no responsibility with respect to an accord and satisfaction. 
Moreover, there is no failure of "due diligence" under Section 1.201(27)
if the claimant does not require its clerks to look for full satisfaction
statements on checks or accompanying communications. Nor is there
any duty of the claimant to assign that duty to its clerks. 


Tex. Bus. & Com. Code Ann. § 3.311 cmt. 7. 


 Appellants have not met their burden on appeal to demonstrate that no evidence
supports the trial court's unchallenged Findings of Fact Nos. 15-17, or that the
evidence conclusively establishes contrary findings. See Republic Underwriters Ins.
Co., 150 S.W.3d at 426, 427; McGalliard, 722 S.W.2d at 696. These findings, in turn,
support the trial court's Conclusions of Law Nos. 19 and 24, in which the trial court
ruled that no accord and satisfaction resulted from the "full satisfaction" checks and
that First Bank did not release appellants, in an "unmistakable," conditioned-on-acceptance manner sufficient to confer the actual knowledge required by both UCC
section 3.311(d) and the common law. See Tex. Bus. & Com. Code Ann. § 3.311(d)
& cmt. 7; Republic Underwriters Ins. Co., 150 S.W.3d at 427; Christian, 792 S.W.2d
at 534 (citing Jenkins, 449 S.W.2d at 455) . As a reviewing court exercising proper
legal-sufficiency review, this Court cannot say that a rational jury could have
reasonably found that the "full satisfaction" checks tendered by Cooke met these
requirements. 

 Because appellants did not establish a tender conditioned on receipt by First
Bank, appellants failed to establish a critical element of their affirmative defense of
accord and satisfaction under the controlling law. Accordingly, we need not address
the remaining sub-issues of their first issue, which are directed to other elements of
that affirmative defense.

 We overrule appellants' first issue. 

 Having concluded that the trial court properly rendered judgment in favor of
First Bank on the grounds that appellants failed to establish accord and satisfaction as
an affirmative defense to First Bank's claims for the outstanding balances due on
appellants' equipment and boat loans, we need not address appellants' remaining
issues, which challenge denial of their counterclaims. 


Conclusion


 We affirm the judgment of the trial court.



 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Higley and Nuchia. (11) 
1. Cooke is president of the Company and a guarantor of Company's notes.
2. Company also had other loans with First Bank. First Bank took security interests in
Company's checking account as collateral for both notes.
3. Riley had either issued previously signed checks to herself or forged the signature of
Cooke or his wife, who was an authorized drawer.
4. Appellants do not challenge the trial court's Conclusion of Law No. 16, which recites
that Company and First Bank "varied by agreement the provisions of [section]
4.406(f) of the [Business and Commerce] Code." See Tex. Bus. & Com. Code Ann.
§ 4.406(f) (Vernon 2002) (requiring notice to bank of unauthorized signature
"promptly," and, at a minimum, within one year); see also Cmty. Bank & Trust, S.S.B.
v. Fleck, 107 S.W.3d 541, 542 (Tex. 2002) (holding that bank and customer may
agree to "a specific, shorter, reasonable period within which a customer must give
notice," pursuant to section 4.103(a) of UCC) (citing Tex. Bus. & Com. Code Ann.
§ 4.103(a) (Vernon 2002) (authorizing variance of terms of UCC chapter 4 by
agreement)); Am. Airlines Employees Fed. Credit Union v. Martin, 29 S.W.3d 86, 96
(Tex. 2000) (stating that bank customer contractually bound by shortened 60-day
notice period, regardless of whether customer read all provisions of bank signature
card). Cooke testified at trial that he had never received First Bank's deposit
agreement, but has not challenged the trial court's implied fact findings that reject that
testimony.
5. Cooke explained that this amount resulted from a 30% reduction of the estimated
$336,00 of unauthorized checks written by Riley. 
6. We note that appellant's reply brief asserts new, late-filed challenges to certain of the
trial court's findings of fact. These challenges address the "great weight and
preponderance" of the evidence and thus purport to seek a remand for a new trial. See
generally Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). Yet,
appellants nonetheless continue their contentions that they proved their case as a
matter of law and seek rendition in their favor. Despite appellants' phrasing of these
late challenges, therefore, we conclude that they have not altered the legal-sufficiency
challenges in their principal brief.
7. Section 3.311(b) provides an exception for "organizations," like First Bank here, who
assert a claim. Tex. Bus. & Com. Code Ann. 3.311(c) (Vernon 2002). We address 
this exception below. 
8. For example, the obligations of good faith, diligence, reasonableness, and care
mandated by the UCC may not be disclaimed by agreement. See Tex. Bus. & Com.
Code Ann. § 1.302(b); see also id., cmt. 1 (delineating additional matters,
encompassed by specific UCC terms that may not be altered by agreement, though
parties may alter legal consequences that would otherwise flow from UCC provisions;
further recognizing that other UCC provisions may restrict freedom of contract, but
that "the general and residual rule is that all provisions of the [UCC] may be varied
by agreement").
9. In addition, Cooke testified at trial that he found the terms were "confusing." Now,
for the first time on appeal, appellants contend that the terms are "ambiguous." We
reject this contention, on the grounds that it was not preserved. See Tex. R. App. P.
33.1(a).
10. Section 3.311, "Accord and Satisfaction by Use of Instrument," provides in part as
follows:


 (a) Subsections (b)-(d) apply if a person against whom a claim is asserted
proves that:


 (1) that person in good faith tendered an instrument to the claimant as
full satisfaction of the claim;

 (2) the amount of the claim was unliquidated or subject to a bona fide
dispute; and

 (3) the claimant obtained payment of the instrument.


 (b) Unless Subsection (c) applies, the claim is discharged if the person against
whom the claim is asserted proves that the instrument or an accompanying
written communication contained a conspicuous statement to the effect that the
instrument was tendered as full satisfaction of the claim.

 . . . .


 (d) A claim is discharged if the person against whom the claim is asserted
proves that within a reasonable time before collection of the instrument was
initiated, the claimant, or an agent of the claimant having direct responsibility
with respect to the disputed obligation, knew that the instrument was tendered
in full satisfaction of the claim.


 Tex. Bus. & Com. Code Ann. § 3.311 (Vernon 2002). 
11. Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009,
continues to sit by assignment for the disposition of this case, which was submitted
on November 25, 2008.