02-10-227-CV












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-10-00227-CV 

 

 


 
 
 Karen Robeson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Mortgage Electronic Registration Systems, Inc. and Midfirst Bank
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 153rd District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

         
This is an appeal from a take-nothing summary judgment in favor of appellees Mortgage Electronic Registration Systems, Inc.
and MidFirst Bank.  In two points, appellant
Karen Robeson contends that the trial court erred by granting summary judgment
and by failing to allow additional discovery before granting summary
judgment.  We affirm.

Background

Robeson
sued appellees for breach of contract, negligence,
wrongful foreclosure, violations of the DTPA, and
violations of the Texas Debt Collection Act (TDCA) in
connection with a home mortgage transaction.  Specifically, she alleged
that before foreclosing on her home, (1) appellees
failed to provide proper notice of acceleration and the substitute trustee’s
sale because MidFirst did not yet own the note and
deed of trust when it gave notice of acceleration and foreclosure, (2) the
foreclosure sale was void because appellees did not
obtain ownership of the note and deed of trust until after the required notices
of acceleration and foreclosure were sent, (3) appellees
failed to comply with sections 51.002(b) and (d) and 51.0025(2) of the Texas
Property Code, and (4) appellees failed to comply
with sections 392.301(a)(8) and 392.304(a)(8) of the Texas finance code.

         
Appellees moved for both a no-evidence and
traditional summary judgment.  The trial court granted a summary judgment
without specifying whether on traditional or no-evidence grounds or both. 
The trial court also denied Robeson’s “request to delay the hearing.”

Standards
of Review

We
review a summary judgment de novo.  Travelers Ins.
Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).  We consider
the evidence presented in the light most favorable to the nonmovant,
crediting evidence favorable to the nonmovant if
reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.  Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009). 
We indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.  20801, Inc.
v. Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who
conclusively negates at least one essential element of a cause of action is
entitled to summary judgment on that claim.  Frost Nat’l Bank v.
Fernandez, 315 S.W.3d 494, 508 (Tex. 2010), cert. denied, 131 S. Ct.
1017 (2011); see Tex. R. Civ. P. 166a(b), (c).

After
an adequate time for discovery, the party without the burden of proof may,
without presenting evidence, move for summary judgment on the ground that there
is no evidence to support an essential element of the nonmovant’s
claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must
specifically state the elements for which there is no evidence.  Id.; Timpte Indus., Inc.
v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must
grant the motion unless the nonmovant produces
summary judgment evidence that raises a genuine issue of material fact.  See
Tex. R. Civ. P. 166a(i) & cmt.;
Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging
every reasonable inference and resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006). 
We review a no-evidence summary judgment for evidence that would enable
reasonable and fair-minded jurors to differ in their conclusions.  Hamilton,
249 S.W.3d at 426 (citing City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005)).  We credit evidence favorable to the nonmovant
if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.  Timpte Indus., 286 S.W.3d at 310 (quoting Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex.
2006)).  If the nonmovant brings forward more
than a scintilla of probative evidence that raises a genuine issue of material
fact, then a no-evidence summary judgment is not proper.  Smith v.
O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman,
118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

Summary
Judgment Evidence

         
As summary judgment evidence, appellees presented the
affidavit of a vice president with MidFirst. 
That evidence shows that Robeson executed a note on November 6, 2007 promising
to repay the lender, Alethes, LLC, monthly
installments in consideration of a house loan.  The note bears
endorsements from Alethes to GMAC Bank and from GMAC
Bank to GMAC Mortgage, LLC; it also contains a blank endorsement from GMAC
Mortgage, LLC f/k/a GMAC Mortgage Corporation.  Also attached to the
affidavit is a deed of trust securing the debt to Alethes,
with MERS as the beneficiary as nominee for Alethes and its successors and assigns, and a recorded
assignment dated February 20, 2009 of the deed of trust from MERS as nominee for Alethes to MidFirst.  Included in the attachment are three
letters from GMAC Mortgage to Robeson dated February, May, and October 2008
indicating that Robeson was in default under the loan. 
The affidavit also states, “Defendant’s authorized agent or predecessor in
interest sent Plaintiff the required notice of default via United States Postal
Service, certified mail, postage prepaid to Plaintiff at the Property address
and, if applicable, their last known mailing address.  The default was not
cured prior to the foreclosure of the Property.”

         
Appellees further provided an affidavit from an employee
of the attorney hired by MidFirst’s loan servicer to
initiate foreclosure proceedings indicating that notice of acceleration and of
the substitute trustee’s sale were mailed on January 8, 2009, at least
twenty-one days in advance of the April 7, 2009 sale.  Copies of the
letter and notice are attached.  The letter begins, “This law firm
represents MIDLAND MORTGAGE CO., the Mortgage Servicer, in its mortgage banking
activities in the State of Texas. . . .  MIDLAND MORTGAGE CO. is acting as
the Mortgage Servicer for MIDFIRST BANK, who is the
Mortgagee of the Note and Deed of Trust associated with the above referenced
loan.”  The letter also states,

The Mortgage Servicer is authorized to represent the
Mortgagee by virtue of a servicing agreement with the Mortgagee.  Pursuant
to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage
Servicer is authorized to collect the debt and to administer any resulting
foreclosure of the property securing the above referenced loan.

Also
attached are the following: a January 2, 2009 letter from Midland to Robeson
indicating that she was no longer eligible for any loan modification programs
because she indicated that she was no longer interested in any such programs
and that she wanted retention instead and a January 5, 2009 letter from Midland
to Robeson telling her the loan had been referred to an attorney to begin
foreclosure.  The evidence also includes a substitute trustee’s deed
indicating that MidFirst bought the secured property
at the foreclosure sale.

         
Robeson did not attach any evidence to her response.  She argued that the
motion for summary judgment was premature because

[d]iscovery is necessary to
confirm the lack of Defendants’ defenses in this case and a matter at the heart
of the case for both sides–whether or not Defendant Mid[F]irst had standing to pursue and complete a substitute
trustee’s sale of the Plaintiff’s property at the time it threatened
foreclosure, whether Mid[F]irst in fact has standing
now to pursue any defenses, all at issue in the pleadings.

Robeson
contended that she needed time to discover whether MidFirst
was acting wrongfully when it sent notices of acceleration and foreclosure
because it did not have standing under the note or deed of trust at that
time.  Robeson also wanted time to propound discovery regarding her
possible damages under the TDCA and DTPA.  Robeson contended specifically that the assignment dated February 20, 2009 was too late to
support the January 8, 2009 notice of acceleration and the undated notice of
the sale.  She also contended that there was no evidence that MidFirst was the owner or holder of the note because there
was no evidence of an endorsement to MidFirst.

         
In their response, appellees noted that the case had
been pending for ten months and that Robeson had failed to conduct any
discovery during that time.  The discovery period was set to end a little
over a month after appellees filed their response,
and Robeson still had not propounded any discovery.  Appellees
also contended that proof of ownership of the note is not an element of a
wrongful foreclosure cause of action.  Attached to their response is an
affidavit from another vice president of MidFirst indicating
that he was personally familiar with Robeson’s loan and stating that the note
and deed of trust were transferred to MidFirst on
October 1, 2008 and that Midland began servicing the loan on December 2,
2008.  Thus, appellees contended that the execution
and recording of the assignment was a mere formality and that MidFirst had the authority to send the January 2009 notice
of acceleration and the notice of substitute trustee’s sale.

Analysis––Adequate Time for Discovery

         
We review a trial court’s determination that there has been an adequate time
for discovery on a case-by-case basis under an abuse of discretion standard,
bearing in mind that a trial court abuses its discretion only when it acts in
an unreasonable and arbitrary manner or when it acts without reference to any
guiding rules or principles.  LaRue v.
Chief Oil & Gas, LLC, 167 S.W.3d 866, 873 (Tex. App.––Fort Worth 2005,
no pet.); see Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985), cert. denied, 476
U.S. 1159 (1986).[2] 
A court of appeals may not reverse a trial court’s ruling under this standard
merely because it disagrees with the decision.  Downer, 701 S.W.2d at 242.

         
In considering whether the trial court permitted an adequate time for
discovery, we consider the following factors:  (1) the nature of the case,
(2) the nature of the evidence necessary to controvert the no-evidence motion,
(3) the length of time the case was active, (4) the amount of time the no-evidence
motion was on file, (5) whether the movant had
requested stricter deadlines for discovery, (6) the amount of discovery that
already had taken place, and (7) whether the discovery deadlines in place were
specific or vague.  Brewer & Pritchard, P.C. v.
Johnson, 167 S.W.3d 460, 467 (Tex. App.––Houston [14th Dist.] 2005, pet.
denied).

         
The evidence shows that the suit had been pending for seven and a half months
when appellees filed their motion for summary
judgment on November 24, 2009.  Robeson does not dispute that she had
failed to propound any discovery at that time.  Even as of February 16,
2010, the date appellees replied to Robeson’s
response to their motion, Robeson had not propounded any discovery.  Trial
was set for April 19, 2010.  Robeson did not provide the trial court any
explanation other than that she needed additional time to investigate appellees’ “defenses.”  Moreover, Robeson failed to
file an affidavit or verified motion for continuance explaining the need for
further discovery.[3] 
See Tex. R. Civ. P. 166a(g); Tenneco, Inc.
v. Enter. Prods. Co., 925 S.W.2d 640, 647
(Tex. 1996); Jaimes v. Fiesta Mart, Inc., 21 S.W.3d 301, 304 (Tex. App.––Houston [1st Dist.]
1999, pet. denied).  In light of how long the case had
been pending and Robeson’s failure as plaintiff to propound any discovery at
all, we conclude and hold that the trial court did not abuse its discretion by
determining that an adequate time for discovery had elapsed.

We overrule Robeson’s second point.

Analysis––Merits of Summary Judgment

         
Robeson’s main complaint in her petition is that MidFirst
did not have the capacity to send her letters accelerating the debt and
noticing foreclosure because it did not own the note and deed of trust until
February 20, 2009, the date of the assignment.

Although
MidFirst did not produce evidence that the note
contained a special endorsement to it from GMAC, it was not required to do so.
 An instrument containing a blank endorsement is payable to the bearer and
may be negotiated by transfer of possession alone.  Tex. Bus. & Comm. Code Ann. § 3.205 (West 2002).  The
original of the note need not be produced as summary judgment evidence of
possession.  See Alexander v. Wells Fargo Bank, N.A.,
No. 02-10-00005-CV, 2011 WL 1331519, at *3 (Tex. App.––Fort Worth Apr. 7, 2011,
pet. denied) (mem. op.); Cannon v. Tex. Indep. Bank, 1 S.W.3d 218,
224–25 (Tex. App.––Texarkana 1999, pet. denied); see also Bittinger v. Wells Fargo Bank, N.A., No. H-10-1745,
2011 WL 3568206, at *4 (S.D. Tex. Aug. 15, 2011) (mem.
op. and order).[4]

The
two MidFirst vice presidents averred in their
affidavits that MidFirst was the owner and holder of
the note and deed of trust; the second vice president confirmed that the date MidFirst became the owner and holder of the note and deed
of trust was in October 2008, well before the January notices were sent. 
In that same affidavit, the vice president states that Midland became the
servicer for MidFirst in December 2008.  Because
this evidence was uncontroverted, it was all that was required for appellees to prove their ownership of the note for
foreclosure purposes.  See Cannon, 1 S.W.3d at 224–25; First
Gibraltar Bank FSB v. Farley, 895 S.W.2d 425, 428
(Tex. App.––San Antonio 1995, writ denied); Christian v. Univ. Fed. Sav.,
792 S.W.2d 533, 534 (Tex. App.––Houston [1st Dist.]
1990, no writ).

Robeson
argues in her brief that the date of the assignment document from MERS to MidFirst raises a fact
issue as to whether MidFirst had the capacity to
authorize Midland to send the required notices in January 2009.  To
understand why this is not so, it is necessary to understand the nature of the MERS registration system.

MERS was
created for the purpose of tracking ownership interests in residential
mortgages.  Mtg. Elec. Reg. Sys. v. Young,
No. 02-08-00088-CV, 2009 WL 1564994, at *4 (Tex. App.––Fort Worth June 4, 2009,
no pet.) (mem.
op.).  Entities such as mortgage lenders subscribe to MERS
and pay annual fees for the electronic processing and tracking of ownership and
transfers of mortgages.  Id.  These members contractually
agree to appoint MERS to act as their common agent on
all mortgages they register in MERS.  Id. When a mortgage is executed through a MERS
member and registered in MERS, it is recorded in the
real property records with MERS named on the
instrument as nominee or mortgagee of record.   Id. 
While the mortgage is in effect, the original lender may transfer the beneficial
ownership or servicing rights on the mortgage to another MERS
member, with MERS tracking these electronic
transfers; these assignments are not recorded in the real property records.
 Id.  If a MERS member assigns its
interest in a mortgage to a nonmember, this assignment is recorded in the real
property records, and MERS deactivates the loan
within its system.  Id.  Thus, through MERS,
interests in notes and liens can be transferred between members without
assignment documents having to be recorded each time.[5]  See id.  Here, the deed
of trust describes MERS as being the beneficiary “as
nominee for” Alethes as well as its “successors and
assigns.”

         
Thus, the date of the assignment from MERS to MidFirst is not evidence of the actual date that MidFirst became entitled to authorize enforcement of the
lender’s rights in the deed of trust by virtue of the transfer of ownership of
the lender’s interest in the note and deed of trust,[6] nor does it raise a fact issue as to the
actual date GMAC’s interests in the note and deed of trust were transferred to MidFirst.[7] 
In fact, even MERS, “as nominee for [Alethes] . . . and [its] successors and assigns,” was
authorized under the deed of trust “to exercise any or all of these interests”
in the deed of trust, which includes a power of sale.

         
The February 20, 2009 assignment was of MERS’s
interest in the deed of trust as beneficiary.  But the deed of trust gives
the lender as well as the beneficiary the right to invoke the power of
sale.  So the assignment of MERS’s status as
beneficiary under the deed of trust on February 20, 2009 does not contradict MidFirst’s evidence that it succeeded to the rights of the
lender under the deed of trust on October 1, 2008.[8]

Accordingly,
we conclude and hold that the trial court did not err by granting summary
judgment on Robeson’s breach of contract and negligence claims, which are based
entirely on her argument that MidFirst lacked the
capacity to enforce the terms of the note and deed of trust, as well as the
parts of her TDCA, DTPA,
and wrongful foreclosure claims that are based on the same argument.  See,
e.g., Life Ins. Co. of Va. v. Gar-Dal, Inc., 570 S.W.2d 378, 380 (Tex. 1978); see also Tex. Fin. Code
Ann. § 392.301(a)(8) (West 2006).

         
The remainder of Robeson’s TDCA, DTPA,
and wrongful foreclosure claims relate primarily to whether MidFirst
provided proper notice of foreclosure under section 51.002(b) and (d) and
section 51.0025(2) of the property code.  Section 51.002(b) requires that
the notice of foreclosure sale (1) must provide the earliest time at which the
sale will begin, (2) must be given at least twenty-one days before the sale,
(3) must be posted “at the courthouse door of each county in which the property
is located” and “in the office of the county clerk of each county in which the
property is located,” and (4) must be served on the debtor in writing by
certified mail.  Tex. Prop. Code Ann. § 51.002(b)
(West Supp. 2011).

The
notice Midland sent to Robeson on MidFirst’s behalf
identified the date of sale as April 7, 2009 and the earliest start time as
10:00 a.m.  Appellees presented prima facie
affidavit evidence that the notice was mailed to Robeson at her last known
mailing address according to MidFirst’s records on
January 8, 2009, at least twenty-one days before the sale.  See
Tex. Prop. Code Ann. § 51.002(e); Sauceda
v. GMAC Mtg. Corp., 268 S.W.3d 135, 139–40 (Tex. App.––Corpus Christi 2008,
no pet.).  Additionally, the affidavit attached to the notice of
substitute trustee’s sale stated that “Notice of Trustee’s Sale was filed with
the County Clerk in the county or counties in which the subject property is
situated and copies thereof posted at said courthouse(s) as required by law and
in the manner specified by ordinance and custom.”  Moreover, Robeson did
not controvert any of this evidence.  And although appellees
did not provide a copy of a notice of default, Robeson did not present any
evidence that they failed to send one, nor did she controvert, or object to,
their affidavit testimony that such a notice was sent.  Therefore, even if
appellees did not prove that they sent all required
notices as a matter of law, they were nevertheless entitled to a no-evidence
summary judgment on that issue.  Accordingly, we conclude and hold that appellees were entitled to summary judgment on Robeson’s
claims that the notice of foreclosure sale did not comply with section
51.002.  See Frost Nat’l Bank, 315 S.W.3d at 508;
Stanley v. CitiFinancial Mtg. Co., 121 S.W.3d 811, 817–18 (Tex.
App.––Beaumont 2003, pet. denied).

         
Section 51.0025(2) provides that a mortgage servicer may administer a foreclosure
sale if “the notices required under Section 51.002(b) disclose that the
mortgage servicer is representing the mortgagee under a servicing agreement
with the mortgagee[,] . . . the name of the
mortgagee[,] and . . . the address of the mortgagee . . . or . . . the address
of the mortgage servicer.”  Tex. Prop. Code Ann.
§ 51.0025(2).  The notice included in appellees’
summary judgment evidence states that Midland was representing MidFirst in accordance with a servicing agreement and
provides MidFirst’s address.  Accordingly, appellees proved their entitlement to summary judgment as a
matter of law on Robeson’s claims based on an alleged failure to comply with
section 51.0025(2).  See Frost Nat’l Bank, 315
S.W.3d at 508.

         
Robeson’s only remaining allegation is that appellees
are liable under section 392.304(a)(8) of the finance
code for “misrepresenting the character, extent, or amount of a consumer debt,
or misrepresenting the consumer debt’s status in a judicial or governmental
proceeding.”  Tex. Fin. Code Ann. § 392.304(a)(8)
(West 2006).  However, Robeson produced no evidence raising a genuine
issue of material fact on this allegation.  Accordingly, we conclude and
hold that appellees were entitled to a no-evidence
summary judgment on that claim.  See Tex. R. Civ. P. 166a(i); Timpte Indus.,
286 S.W.3d at 310.  Having concluded that appellees
were entitled to a traditional motion for summary judgment as to most of their
claims and a no-evidence summary judgment as to the remainder, we overrule
Robeson’s first point.

Conclusion

         
Having overruled both of Robeson’s points, we affirm the trial court’s
judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

Gardner, J., dissents; opinion
to follow.

 

DELIVERED:  January 5,
2012

 





 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO.
02-10-00227-CV

 


 
 
 Karen Robeson
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Mortgage Electronic Registration Systems, Inc. and Midfirst Bank
 
 
  
 
 
 APPELLEES
 
 


 

----------

 

FROM THE 153rd District Court OF Tarrant COUNTY

----------

 

DISSENTING
MEMORANDUM OPINION[9]

----------

I
agree with the majority that the main issue in this case is whether MidFirst had acquired the capacity as mortgagee to initiate
nonjudicial foreclosure proceedings before it sent
Ms. Robeson the letters of January 5 and January 8, 2009, accelerating the debt
and noticing the trustee’s sale.  But I respectfully disagree with the majority’s
ultimate conclusion and instead believe that a genuine issue of material fact
exists as to when MidFirst acquired that capacity
because of the obvious conflict in MidFirst’s own
summary judgment evidence.

The
assignment of the note and deed of trust from MERS
(as nominee for Alethes, LLC, the original mortgagee)
to MidFirst, a copy of which was attached to the
affidavit of MidFirst Vice President Melissa Poage, states that it was executed on February 20, 2009,
and filed in the county records on March 4, 2009.  But the affidavit of MidFirst Vice President Thad Burr states that the note and
deed of trust were “transferred” to MidFirst on
October 1, 2008.  I do not see how the majority concludes that the date of
execution of the assignment to MidFirst of the note
and deed of trust somehow is “not evidence of the actual date” that MidFirst became authorized to initiate foreclosure under
the deed of trust, but the statement in the affidavit of Thad Burr as to a date
some four months earlier upon which there was a “transfer,” whatever that
means, is “uncontroverted” evidence.  Majority op. at 5.

It
is important to clarify that the affidavits of those two vice presidents were
not filed at the same time as part of the supporting evidence for MidFirst’s motion for summary judgment, although they are
addressed together in the majority opinion.  Majority
op. at 5.  To the contrary, the Melissa Poage
affidavit, with its attached documents including the February 20, 2009
assignment to MidFirst, which was, in turn, attached
to the motion for summary judgment, was initially relied upon by MidFirst as the sole basis for its authority to initiate
foreclosure proceedings and to sell Ms. Robeson’s property at the trustee’s
sale on April 7, 2009.  Ms. Robeson’s response pointed out and brought
home to both MidFirst and the trial court that the
letters initiating foreclosure, dated January 5 and 8, 2009, were sent more
than a month and a half prior to the February 20 assignment of the note and
deed of trust to MidFirst.  It was only after
receiving the Robeson response that Midfirst’s later
affidavit was then prepared and attached to and filed with MidFirst’s
reply to Ms. Robeson’s response to the motion for summary judgment, for the
first time stating that the note and deed of trust were actually “transferred
to MidFirst on October 1, 2008,” and that Midland
Mortgage Co. had begun servicing the loan on December 2, 2008, prior to any
letter demands or notices from MidFirst to Ms.
Robeson.

I
would hold that Ms. Robeson was entitled to rely on MidFirst’s
own affidavits and documents filed in support of MidFirst’s
hybrid traditional and no-evidence motion for summary judgment and that MidFirst’s own summary judgment evidence raised a genuine
issue of material fact as to when it had authority to initiate foreclosure,
thus precluding summary judgment on the claim for violations of the Texas Debt
Collection Practices Act.  See Tex. Fin. Code Ann. § 392.301(a)(8) (West 2006); Biggers
v. BAC Home Loans Serv’g, LP,
767 F. Supp. 2d 725, 730 (N.D. Tex. 2011).

 

ANNE GARDNER
JUSTICE

 

DELIVERED:  May 22,
2012














[1]See
Tex. R. App. P. 47.4.





[2]The
same standard of review applies to claims of a lack of adequate discovery
before a trial court grants a traditional summary judgment.  Cooper v.
Circle Ten Council Boy Scouts of Am., 254 S.W.3d 689, 696 (Tex.
App.––Dallas 2008, no pet.).





[3]Although
Robeson requested additional time for discovery in her response to appellees’ motion for summary judgment, the response was
not verified and, thus, cannot serve as a verified motion for
continuance.  See, e.g., Tex. R. Civ. P. 251,
252.





[4]Although
federal authority is not controlling for this court, it is particularly
persuasive in this type of case, as much home mortgage litigation in Texas is
being tried in the federal courts.  See, e.g., Wigginton
v. Bank of N.Y. Mellon, No. 3:10-CV-2128-G, 2011 WL 2669071, at *3 (N.D.
Tex. July 7, 2011) (mem. op. and order); Wells v. BAC Home Loans Servicing, L.P., W-10-CA-00350, 2011 WL
2163987, at *3 (W.D. Tex. April 26, 2011) (order)
(both citing numerous federal cases applying Texas law).





[5]As
a federal court has described,

The MERS system is merely an
electronic mortgage registration system and clearinghouse that tracks
beneficial ownerships in, and servicing rights to, mortgage loans.  The
system is designed to track transfers and avoid recording and other transfer
fees that are otherwise associated with the sale. MERS is defined in Texas Property Code § 51.0001(1) as a
“book entry system. . . .”

Richardson v. CitiMortgage, Inc., No. 6:10cv119,
2010 WL 4818556, at *5 (E.D. Tex. Nov. 22, 2010) (mem. op. and order) (citations omitted).  “Book entry
system” is defined as “a national book entry system for registering a
beneficial interest in a security instrument that acts as a nominee for the
grantee, beneficiary, owner, or holder of the security instrument and its
successors and assigns.”  Tex. Prop. Code Ann. §
51.0001(1) (West Supp. 2011).  A book entry system such as MERS is included within the definition of “mortgagee” under
Texas law.  Id. § 51.0001(4).





[6]A
mortgage typically follows the note it secures.  Gilbreath v. White,
903 S.W.2d 851, 854 (Tex. App.––Texarkana 1995, no
writ); J.W.D., Inc. v. Federal Ins. Co.,
806 S.W.2d 327, 329–30 (Tex. App.––Austin 1991, no
writ); Lawson v. Gibbs, 591 S.W.2d 292, 294
(Tex. Civ. App.––Houston [14th Dist.] 1979, writ ref’d n.r.e.).





[7]We
have previously held that an assignment of deed of trust from MERS to the lender dated effective two years after the
actual date of transfer of ownership of the loan did not raise a fact issue as
to whether the assignment was “fabricated.”  Hornbuckle
v. Countrywide Home Loans, Inc., No. 02-09-00330-CV, 2011 WL 1901975, at *4
(Tex. App.––Fort Worth May 19, 2011, no pet.) (mem. op.).





[8]Moreover,
we note that Robeson never challenged Midland’s right as a servicer to initiate
foreclosure proceedings.  See Tex. Prop. Code
Ann. §§ 51.0001(4), 51.0025 (West Supp. 2011).





[9]See
Tex. R. App. P. 47.4.